245 N.J. Super. 46 (1990)
583 A.2d 785
STATE IN THE INTEREST OF C.S.
Superior Court of New Jersey, Appellate Division.
Argued November 5, 1990.
Decided December 18, 1990.
*47 Before Judges DREIER and ASHBEY.
Steven J. Kaflowitz, Special Deputy Attorney General argued the cause for appellant (Edmund J. Tucker, Special Deputy Attorney General in Charge, Acting Prosecutor, attorney; Steven J. Kaflowitz, of counsel, Raymond Stine, on the letter brief).
Mitchell Edward Ignatoff argued the cause for respondent (Mitchell Edward Ignatoff, on the letter brief).
The opinion of the court was delivered by DREIER, J.A.D.
The State appeals by leave granted from a suppression order in this juvenile proceeding. A detective seized various items, including traces of cocaine, marijuana, drug paraphernalia, nunchucks and a switch blade knife from the juvenile's bedroom. On the basis of this seizure, the detective arrested the juvenile at school, where in a search incident to the arrest, the detective also seized brass knuckles and further quantities of marijuana. The juvenile successfully moved to suppress all of the evidence *48 on the basis that the consent to search his room had been signed only by his father. It is undisputed that the juvenile lived in a home owned solely by his mother, the parents having been divorced for seven years prior to the events in question.
The sole witness on behalf of the State was the arresting officer, a juvenile detective. He testified that he had spoken with the juvenile's parents when, together, they came to his office one evening and "expressed their concern" that their child "appeared to be under the influence on occasion, that he was acting irrational, maybe violent at times. And they just were looking for some guidance at that particular time." The officer gave the parents pamphlets, directions for support groups and general advice.
Some time after the initial contact, the detective received a call from the boy's father. He told the detective that he believed his son had drugs in his room and he wanted the police to come and look into it. The detective went to the house and found the father present. Also present were the boy's maternal grandmother (who lives in the home with the mother), a maternal uncle who also lives at the premises, and possibly two maternal aunts who had been staying with their sister (the boy's mother) for a few months. Although the record does not state the circumstances of the father being on the premises, the mother testified that she assumed that her mother had let him in. She acknowledged that her husband had recently started to play an active role in the boy's upbringing. The father informed the detective that since they had their first conversation, he had been "keeping an eye on the boy and his room." He informed the detective that he saw a pipe in the room and told him it was there. The officer offered the father a form containing a consent to search the premises, and the detective explained it would be used specifically to search the son's room. The items noted earlier were then discovered.
The mother testified that she was the sole owner of the premises, and neither she nor anyone on her behalf had consented *49 to a search of the house. While her mother may have let her exhusband into the home on this occasion, the boy's father did not spend much time there.
The Fourth Amendment proscribes unreasonable searches and seizures to insure that citizens will be protected from warrantless searches. And see N.J. Const. (1947), Art. I, para. 7. An exception to the warrant requirement is when a search is supported by voluntary consent. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Miller, 159 N.J. Super. 552, 556, 388 A.2d 993 (App.Div. 1978). Such consent can be granted either by the owner of the property or by any third party who possesses common authority over the premises. United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242, 250 (1974); State v. Miller, 159 N.J. Super. at 558, 388 A.2d 993. The burden of proof for showing validity of consent falls upon the State, and is satisfied in this context by a showing that the consent was voluntary, State v. Johnson, 68 N.J. 349, 353-354, 346 A.2d 66 (1975), and that
permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected. [State v. Miller, 159 N.J. Super. at 557, 388 A.2d 993 (citing Matlock, 415 U.S. at 171, 94 S.Ct. at 993, 39 L.Ed.2d at 250)].
The test hinges upon a finding of
mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that others have assumed the risk that one of their number might permit the common area to be searched. [Id. 159 N.J. Super. at 557-558, 388 A.2d 993].
A parent can consent to the search of property of a child under the parent's control. State v. Douglas, 204 N.J. Super. 265, 280, 498 A.2d 364 (App.Div. 1985), certif. den. 102 N.J. 378, 508 A.2d 242 (1985) and 102 N.J. 393, 508 A.2d 253 (1986). Furthermore, where there is multiple control over property, any party in possession has the right to consent to a search. State v. Santana, 215 N.J. Super. 63, 69, 521 A.2d 346 (App.Div. 1987).
*50 The problem in the case before us is that, while the father had obvious concern over his son's conduct, he had no legal control over the premises where his son lived. Yet this lack of legal control may not have been apparent to the detective. The issue is thus sharply presented: If the detective reasonably determined that the father had the right to consent to the search of his son's room, can the consent be vitiated by a later showing that the father had no legal right to control the premises?
The United States Supreme Court has recently considered a similar issue in Illinois v. Rodriguez, 497 U.S. ___, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). There, the defendant's former live-in girl friend, who had retained a key to the premises, admitted the police, although she had no "common authority" to do so. The Supreme Court held that for an apparently consensual search to pass federal constitutional muster, a police officer conducting the search need not be factually correct, but only reasonable in his belief that consent was given. 497 U.S. at ___, 110 S.Ct. at 2799, 111 L.Ed.2d at 159. The Court further noted that where a claim of apparent consent is raised, the issue is "whether the right to be free of unreasonable searches has been violated." Id. 497 U.S. at ___, 110 S.Ct. at 2801, 111 L.Ed.2d at 161. (Emphasis in Original). The standard to be applied is an objective one, namely, "would the facts available to the officer at the moment ... `warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises?" Ibid. (Quoting from Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968)).
This court has already employed a standard of objective reasonableness in determining whether a party has sufficient control over property to consent to its being searched. In State v. Santana, supra, we adopted such a standard with regard to an automobile search, and stated:
Since the reasonableness of the police action at the time is the question to be determined, the case must turn upon the appearances of control at the time, not *51 any subsequent resolution of questions of title or property rights. [215 N.J. Super. at 71, 521 A.2d 346].
We see no reason, especially in view of the United States Supreme Court's decision in Illinois v. Rodriguez, to depart from this position.
This matter will be remanded to the trial judge for a reconsideration of the suppression motion, applying the principles of Illinois v. Rodriguez. Whether the search in this case falls within or without the Rodriguez standards is a decision for the trial judge who can better appraise credibility and, if necessary, probe the witnesses to resolve the issue of objective reasonableness.[1] On remand, the judge should apply an objective standard, viewing the situation through the eyes of a reasonable officer in the detective's position. While the detective knew that the parents were divorced, and that the father did not reside in the home, the parents had come to him as a couple to discuss their concern with their son. The father had informed him that he had been keeping an eye not only on his son, but also on "his room." The father was on the premises, apparently without dispute, in the presence of his ex-wife's mother and one or more other relatives. The trial judge should determine from the facts already developed, or after taking additional necessary testimony, whether the officer reasonably could have assumed that a valid consent was given, notwithstanding the fact the subsequent events may have disclosed the father's lack of authority.
In reaching our conclusions, we have not lost sight of the fact that in some instances the New Jersey Supreme Court in interpreting the New Jersey Constitution has imposed more stringent limitations on State action than has the United States Supreme Court in interpreting the Federal Constitution. See *52 e.g., State v. Novembrino, 105 N.J. 95, 519 A.2d 820 (1989) (rejecting the good faith exception to the exclusionary rule, adopted in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)), and State v. Hempele, 120 N.J. 182, 197, 225, 576 A.2d 793 (1990)) (rejecting the implicit "garbage search" permission recognized in California v. Greenwood, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988)). Yet in State v. Bruzzese, 94 N.J. 210, 463 A.2d 320 (1983), cert. den. 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984), the Court applied a standard of objective reasonableness in holding that "the proper inquiry for determining the constitutionality of a search-and-seizure is whether the conduct of the law enforcement officer who undertook the search was objectively reasonable...." Id. 94 N.J. at 219, 463 A.2d 320. Thus, where a judge finds that the officer on the scene reasonably determined that a valid consent to the search had been given, we will not assume that the New Jersey Supreme Court would upset such searches, and the consequent convictions based upon the allegedly tainted evidence.
The order of suppression is reversed, and the matter is remanded to the Law Division for rehearing and redetermination in accordance with this opinion.
NOTES
[1] We recognize that the testimonial portion of the hearing in the trial court had been concluded before the date of the Rodriguez opinion, and that the final decision in the case had been rendered only shortly after Rodriguez was decided.