619 A.2d 291

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**George R. QUILES, Appellee.**

Superior Court of Pennsylvania.

Argued May 1, 1992.

Filed Jan. 4, 1993.

154

Karen L. Grigsby, Asst. Dist. Atty., Philadelphia, for Com., appellant.

Marc Neff, Philadelphia, for appellee.

Before ROWLEY, President Judge, and WIEAND, MCEWEN, DEL SOLE, MONTEMURO,[1] BECK, TAMILIA, KELLY and JOHNSON, JJ.

KELLY, Judge:

In this opinion we are called upon to determine, *inter alia*, whether and to what extent law enforcement authorities must inquire as to an individual's actual authority to consent to

---

1. Former Judge, now Justice, Montemuro did not participate in this decision.

police entry into a dwelling. We conclude that law enforcement authorities need not question an individual as to his or her actual authority to consent, once that individual has consented to an entry of the premises. Accordingly, we reverse the suppression order and remand the instant matter to the trial court for proceedings consistent with this opinion.

## I. STANDARD OF REVIEW

When reviewing the Commonwealth's appeal from an adverse decision of the suppression court, we must consider "only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted." *Commonwealth v. Smith*, 396 Pa.Super. 6, 8, 577 A.2d 1387, 1388 (1990). When the evidence supports the trial court's findings of fact, we may reverse only when the legal conclusions drawn from these facts are erroneous. *Id.* It is the sole province of the suppression court, as finder of fact, to weigh the credibility of the witnesses. *Id.* Thus, the fact finder is free to believe all, part or none of a witnesses' testimony.

## II. FACTS AND PROCEDURAL HISTORY

The only witness to testify at the suppression hearing was Police Officer John Sharkey. From this testimony, the suppression court made the following findings of fact which, finding them to have support in the record, we adopt for purposes of this appeal.

1. That on September 7, 1989 [sic], Police Officer Sharkey received information from a confidential informant that an Hispanic male known as Juan was engaging in the sale of narcotics from the location of 2922 North Franklin Street.

2. That on August 24, 1988, Officer Sharkey was present at 2922 North Franklin Street when a search was conducted of said premises which revealed narcotics and other drug paraphernalia.

3. That on September 7, 1988, Police Officer Perez, in plain clothes, went to the location of 2922 North Franklin Street in an effort to purchase cocaine.

4. That Police Officer Perez was told by an Hispanic male to go to the corner outside the location to purchase a quarter ounce of cocaine because, as the Hispanic male indicated to him, he did not have any quarter ounces left and could not complete the transaction.

5. That as a result of said information, Police Officer Sharkey, as the affiant, obtained Search and Seizure Warrant Number 64950 on September 7, 1988, to search the premises at 2922 North Franklin Street.

6. That on that same day at approximately 5:30 p.m., Police Officer Sharkey in the company of other police officers went to 2922 North Franklin Street to execute the search and seizure warrant he had obtained.

7. That Police Officer Sharkey knocked on the door, received no response after approximately one to two minutes and then forcibly entered said premises and conducted the search pursuant to the search and seizure warrant.

8. That said search revealed drug paraphernalia as well as narcotics and approximately $145.00 in U.S. currency.

9. That Police Officer Sharkey returned to his police district to process said search and seizure warrant and received a phone call from a confidential informant who stated that Juan was back at the location of 2922 North Franklin Street.

10. That at approximately 7:30 p.m., Police Officer Sharkey, along with other officers, proceeded to 2922 North Franklin Street with the intent of arresting Juan. The police officers were not in possession of an arrest warrant at that time.

11. That Police Officer Sharkey knocked on the door, and was advised by an unknown female to enter. Whereupon he did enter and subsequently the defendant was arrested. Following his arrest, certain physical evidence was taken from his person.

Trial Court Opinion of 11/2/89 at 1–3. Because the suppression court found Officer Sharkey to be credible with regard to the issue of consent, *see* N.T. July 6, 1989 at 11–12, we note

the following uncontradicted evidence.[2]   Upon entering the premises the second time and announcing their identity, Officer Sharkey and a fellow officer observed a male run up a flight of stairs.   The officers gave chase, following the male into the front bedroom, and observed him discard a black leather pouch which proved to contain cocaine.   The male, later identified as appellee, George Quiles, was thereupon arrested and charged with possession of and possession with intent to deliver a controlled substance, and conspiracy.

From the foregoing facts, the suppression court found that although the initial search of the residence, supported by a valid search warrant was proper, the subsequent entry into the premises was unlawful.   Accordingly, the court concluded that any evidence seized as a result of this entry must necessarily be suppressed and that therefore, appellee's arrest was unlawful.   Particularly relevant to the instant appeal, the court held that the entry into the home could not be supported by consent as "there was no evidence which established an-

2.   We note that we are not, as suggested by the dissent, engaging in an improper exercise of fact finding.   At the suppression level, appellee pursued three theories: that the entry of the premises was not justified by exigent circumstances;   that the entry of the premises was not justified by consent;   and, alternatively, that there was no probable cause to arrest appellee.   Appellee's Brief in Support of Motion to Suppress, July 3, 1989, at 7–11.   To carry its burden that the police actions were lawful, as it must, see *Commonwealth v. Williams*, 380 Pa.Super. 227, 551 A.2d 313 (1988);   *Commonwealth v. Verdekal*, 351 Pa.Super. 412, 506 A.2d 415 (1986), the Commonwealth adduced evidence relevant to the exigency of the circumstances, N.T. May 12, 1989 at 10–11, the apparent authority of the consenter, *id.* at 10, and the probable cause to arrest appellee.   *Id.* at 10.   This testimony was uncontradicted.   Because the uncontroverted facts were adduced below and are part of the fully developed record, we may consult them in the absence of specific suppression court findings.   See *Commonwealth v. Haynes*, 395 Pa.Super. 322, 333–34, 577 A.2d 564, 570 (1990), *allocatur denied*, 527 Pa. 598, 589 A.2d 689 (1991) (although suppression court failed to make findings of fact on issue, and despite the contradictory testimony surrounding appellant's arrest, this Court "consult[ed] the record directly," making inferences from the record "to ascertain the facts of appellant's arrest.").   Cf. *Commonwealth v. Gelber*, 406 Pa.Super. 382, 594 A.2d 672 (1991), *allocatur denied*, 529 Pa. 667, 605 A.2d 332 (1992) (despite suppression court's failure to enter findings of fact and conclusions of law on the record, we may refer to trial court's resolution of post-trial motions and the record in reviewing suppression orders).

nouncement of purpose," and "there was no evidence to determine or that the police inquired to determine, the authority of the female to consent to their entry when police believed the house was owned by a male." Trial Court Opinion of November 2, 1989 at 7–8.

Subsequent to a timely appeal by the Commonwealth and a determination of the issues by a panel of this Court, a timely petition for *en banc* consideration was granted on October 3, 1991.

On appeal, the Commonwealth raises the following issues for our consideration.

1. DID THE LOWER COURT ERR IN SUPPRESSING ALMOST $4000 WORTH OF COCAINE DISCARDED BY DEFENDANT IN A POLICE OFFICER'S PRESENCE WHEN, AFTER THE OFFICER KNOCKED AT DEFENDANT'S HOUSE, ANOTHER RESIDENT OF THE HOUSE GAVE POLICE CONSENT TO ENTER AND DEFENDANT, UPON SEEING THE OFFICERS, THREW DOWN THE DRUGS?

2. DID THE LOWER COURT ERR IN SUPPRESSING ALMOST $4,000 WORTH OF COCAINE SEIZED PURSUANT TO A WARRANTLESS ARREST OF DEFENDANT IN HIS HOUSE, WHERE THERE WERE EXIGENT CIRCUMSTANCES EXCUSING THE WARRANT REQUIREMENT?

3. DID POLICE HAVE PROBABLE CAUSE TO ARREST DEFENDANT?

Commonwealth's Brief at 3.

## III. CONSENT TO ENTER THE PREMISES

Initially, the Commonwealth contends that the trial court erred in concluding that the officers did not have lawful consent to enter the home. Specifically, the Commonwealth argues that, having recovered evidence in the previous search suggesting that a Leslie Rodriquez lived at the residence, it was reasonable for the officers to conclude that the female voice stating "come in" following the officers' knock, was that

of Leslie Rodriquez, one who, as a resident of the premises, possessed authority to consent to the entry of the home. Moreover, the Commonwealth contends that the trial court erred in concluding that the officers were required to announce their identity and purpose prior to their entry. Because entry was consensual, the Commonwealth concludes that announcement of identity of purpose was unnecessary pursuant to *Commonwealth v. Morgan*, 517 Pa. 93, 534 A.2d 1054 (1987). We agree.

In *Commonwealth v. Morgan, supra,* law enforcement authorities, armed with a search warrant, approached the residence of Joseph Morgan. Two detectives, not in uniform, knocked on the screen door, the inner door being open. Morgan responded, "Who is it?" One of the detectives, observing Morgan inside, exclaimed "Joe," to which Morgan responded, "Come on in." The two detectives, joined by other officers, entered the home, identified themselves and read the search warrant to Morgan. The subsequent search uncovered a large quantity of narcotics, drug paraphernalia and currency. Morgan's motion to suppress was denied and he was convicted of drug related offenses. The trial court granted his Motion for a new trial, finding that the officers who executed the search warrant had violated Pa.R.Crim.P. 2007, the "knock and announce" rule. The trial court specifically found that Morgan had not lawfully consented to the officers' entry because knowing and voluntary consent could not be given absent identity of the party seeking entry and that party's purpose for entering. On appeal, a divided panel of this Court affirmed. *Commonwealth v. Morgan*, 353 Pa.Super. 463, 510 A.2d 754 (1986). Our Supreme Court granted the Commonwealth's petition for *allocatur.* 514 Pa. 629, 522 A.2d 558 (1987).

Our Supreme Court began its analysis by recognizing that "as a matter of law, appellee's statement, 'come on in,' cannot be construed as anything other than consent." *Commonwealth v. Morgan, supra,* 517 Pa. at 96, 534 A.2d at 1056. The Court then concluded that no violation of Rule 2007 could occur when the officers were invited by Morgan to enter the

premises "in spite of the fact that Mr. Morgan did not know who the officers were or why the officers were there." *Id.* at 97, 534 A.2d at 1057. The Court instructed that,

> An announcement of purpose prior to entry under these circumstances to afford appellee the opportunity to surrender the premises peacefully would have been a "futile gesture" inasmuch as appellee had *already* surrendered the premises by his consent.

*Id.* (emphasis in original).

■ Instantly, the officers likewise reacted to an open invitation to "come on in." As our Supreme Court has made clear, where an individual extends an open invitation to visitors to enter his or her home, it is immaterial that he or she does not know the visitors to be law enforcement authorities. Having invited those knocking to "come in," it cannot later be claimed that the entry was unlawful solely because the officers failed to identify themselves and their purpose. The trial court erred when it concluded otherwise.[3]

3. We note that the *Morgan* holding was the latest in a line of Pennsylvania Supreme Court cases recognizing that ruse or deception do not invariably vitiate consent. *See e.g. Commonwealth v. Albrecht,* 510 Pa. 603, 604, 511 A.2d 764 (1986), *cert. denied,* 480 U.S. 951, 107 S.Ct. 1617, 94 L.Ed.2d 801 (1987) (suspect's consent to search the trunk of his car valid, despite the fact that the uniformed officers did not inform the suspect that they knew incriminating evidence was located in the trunk); *Commonwealth v. Brown,* 437 Pa. 1, 7–8, 261 A.2d 879, 882 (1970) (uniformed officer's deception as to the reason for wanting suspect's gun did not render the consensual relinquishment of the gun unlawful); *but see Commonwealth v. Slaton,* 530 Pa. 207, 608 A.2d 5 (1992) (failure of narcotics agents to disclose change in the focus of their investigation prior to their second search rendered pharmacist's consent to the search of his establishment invalid as obtained through deception).

   This Court has also recognized that consent may be valid despite deception as to an officer's identity and/or motivation in obtaining a suspect's consensual relinquishment of privacy interests. *See Commonwealth v. Carelli,* 377 Pa.Super. 117, 136, 546 A.2d 1185, 1194 (1988) (officer's failure to disclose to wife the primary reason for wanting to speak with her husband would not invalidate her consent to officer's presence on the premises); *Commonwealth v. Markman,* 320 Pa.Super. 304, 313, 467 A.2d 336, 341 (1983) ("[c]onsent may be deemed voluntary even when procured by a police officer who misrepresents both his identity and purpose in making the search"); *Commonwealth v. Ginter,* 289 Pa.Super. 9, 432 A.2d 1024 (1981) (same); *Commonwealth v.*

■ Neither can it be successfully maintained, as the trial court concluded, that there was an absence of consent because "there was no evidence to determine, or that the police inquired to determine, the authority of the female to consent to their entry when the police believed the house was owned by a male." Trial Court Opinion of November 2, 1990 at 7–8. In *Commonwealth v. Blair*, 394 Pa.Super. 207, 575 A.2d 593 (1990), officers investigating a traffic accident in which one of the participants had driven away called at the house at which the suspect vehicle was registered. Upon arriving, the officers observed the damaged vehicle in the driveway. When the officers knocked at the door, a neighbor answered and admitted the officers to the home. The officer immediately observed appellant bleeding from several abrasions and detected a strong odor of alcohol emanating from appellant. Following arrest and conviction of various DUI related offenses, appellant appealed. On appeal, appellant argued that because the individual authorizing entry into the home did not have actual authority to consent, the evidence seized as a result of the entry should have been suppressed.

The *Blair* panel began by cogently summarizing the law of third party consent as follows.

Third-party consent cases fall into four broad categories. Previous to this decision, cases in our Commonwealth concerned situations where: (1) the consenting party had "superior authority" to the party objecting to the search, *see Commonwealth v. Latshaw*, 481 Pa. 298, 392 A.2d 1301 (1978), *cert. denied*, 441 U.S. 931, 99 S.Ct. 2050, 60 L.Ed.2d 659 (1979) (barn's owner had not surrendered any indicia of her absolute control over barn where defendant's marijuana was found pursuant to warrantless search with consent of barn's owner); (2) the consenting party had equal or common authority to the party objecting to the search, *see, Commonwealth v. Arnold*, 331 Pa.Super. 345, 480 A.2d 1066 (1984); *Commonwealth v. Lowery*, 305 Pa.Super. 66, 451

*Schaszberger*, 285 Pa.Super. 586, 428 A.2d 200 (1981) (same); *Commonwealth v. Morrison*, 275 Pa.Super. 454, 418 A.2d 1378 (1980) (same).

A.2d 245 (1982); *Commonwealth v. Devlin,* 302 Pa.Super. 196, 448 A.2d 594 (1982); (3) the consenting party had inferior authority to the party objecting to the search, *see, Commonwealth v. Garcia,* 478 Pa. 406, 387 A.2d 46 (1978), *Commonwealth v. Netting,* 315 Pa.Super. 236, 461 A.2d 1259 (1983) (third party who has neither interest nor control in a premises may not give the police valid consent to conduct a warrantless search of the premises); and (4) the last area of third-party consent cases concerns those situations where a police officer is reasonably mistaken as to the actual authority of the party consenting to his entry; stated another way, the police officer reasonably mistakes apparent authority for actual authority to consent to his entry.

*Id.* 394 Pa.Super. at 215, 575 A.2d at 597 (footnotes omitted). Recognizing that the seminal case of *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), had left for another day the question of whether a warrantless search may be upheld based on an officer's reasonable belief that the party consenting had actual authority to do so, this Court aligned itself with the majority of jurisdictions and concluded that apparent authority alone was sufficient to justify a consensual entry into and search of the premises. *Id.* 394 Pa.Super. at 216, 575 A.2d at 597. The Court concluded that,

In adopting the majority position, we are not allowing *carte blanche* consent entries into residences with the police officer being able to ratify his entry at a later date suppression hearing by merely stating that he was mistaken as to the actual authority of the consenting party. We hold that the police officer's reasonable mistake must be judged from an objective standard based on the totality of the circumstances. Although the police officer's state of mind is one factor to be considered in determining the reasonability of the mistake, it is not the only factor. Moreover, the police officer's mistake must be reasonable. In ambiguous situations, those situations which would cause a reasonable person to question the consenting party's actual authority or if the consenting party's assertion of authority appear unreasonable, a police officer should make further inquires to

determine the status of the consenting party. Reliance on a third party's bald assertion in such situations could subject any search to the remedy of the exclusionary rule.

*Id.* at 216–17, 575 A.2d at 598 (footnote and citation omitted). The panel explained that their holding buttressed an individual's reasonable expectation of privacy by continuing to deter unreasonable searches or seizures. *Id.* *"Although we could require police officers to secure both actual and apparent authority before entering a residence, we do not believe the police should have to institute an action for declaratory judgment to determine the authority of the third party or individual giving consent to enter or search." Id.* (emphasis added).

Following on the heels of *Commonwealth v. Blair, supra,* the United States Supreme Court, in *Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) concluded simply that the United States Constitution was,

no more violated when officers enter without a warrant because they reasonably (though erroneously) believe that the person who has consented to their entry is a resident of the premises, than it is violated when they enter without a warrant because they reasonably (though erroneously) believe they are in pursuit of a violent felon who is about to escape. *See Archibald v. Mosel,* 677 F.2d 5 (CA1 1982).

*Id.* at 186, 110 S.Ct. at 2800, 111 L.Ed.2d at 160. As with other factual determinations regarding search and seizure, the Court stated that, "determination of consent to enter must 'be judged against an objective standard: would the facts available to the officer at the moment ... warrant a [person] of reasonable caution in the belief' that the consenting party had authority over the premises." *Id., quoting Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968); *see also Commonwealth v. Blair, supra,* 394 Pa.Super. at 217–18, 575 A.2d at 598 (recognizing that "it is reasonable for police officers to assume that a person who answers the door

at a residence has authority to consent to the *entry* into the residence.") (emphasis in original).[4]

4. Reference to the officer's reasonable reliance upon a party's authority to consent to the entry into the premises does not suggest a relationship between the apparent authority doctrine and the good faith doctrine of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1974), rejected by our Supreme Court in *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991). As Professor LeFave has recognized "the apparent authority doctrine was well-established in lower court decisions before *Leon*." 3 W. LeFave, Search and Seizure, § 8.3 at 52 n. 98.3 (1992 Pocket Part). Indeed, two of the four states cited by the Court in *Edmunds* which have rejected *Leon* have adopted the apparent authority doctrine. *See People v. Richards*, 152 Misc.2d 775, 578 N.Y.S.2d 380 (1991); *State v. Lee*, 245 N.J.Super. 441, 586 A.2d 256 (1991); *In re C.S.*, 245 N.J.Super. 46, 583 A.2d 785 (1990). Moreover, unlike in *Edmunds*, no case which we have uncovered has held, suggested or even intimated that a distinction between the Pennsylvania and United States Constitutions exists with regard to consent to enter into premises. Rather, Pennsylvania cases have interpreted consent to enter into premises consistent with United States Supreme Court interpretation. *See, e.g., Commonwealth v. Latshaw*, 481 Pa. 298, 392 A.2d 1301 (1978) (plurality), *cert. denied, Latshaw v. Pennsylvania*, 441 U.S. 931, 99 S.Ct. 2050, 60 L.Ed.2d 659 (1979) (applying the approach adopted in *United States v. Matlock, supra*); *Commonwealth v. Kean*, 382 Pa.Super. 587, 556 A.2d 374 (1989), *allocatur denied*, 525 Pa. 596, 575 A.2d 563 (1990) (third party consent passes both Pennsylvania and United States constitutional muster); *Commonwealth v. Lowery*, 305 Pa.Super. 66, 451 A.2d 245 (1982) (applying *Latshaw*).

We note that we reject the view taken in Judge Johnson's dissenting opinion that "[i]n light of our Supreme Court's reluctance to adopt the holdings of the United States Supreme Court which unduly infringe upon the right to privacy of the citizens of this Commonwealth, [we should not adopt] the holding in *Rodriguez*, absent a statement on these issues by our Supreme Court." Dissenting Opinion per Johnson, J. at 5. We are bound to follow United States Supreme Court decisions interpreting the federal constitution, because "the federal judiciary is supreme in the exposition of the law of the Constitution." *Cooper v. Aaron* 358 U.S. 1, 18, 78 S.Ct. 1401, 1410, 3 L.Ed.2d 5, 17 (1958). *See also Commonwealth v. Hulehan*, 338 Pa.Super. 309, 487 A.2d 980 (1985) ("the United States Supreme Court is the ultimate arbiter of the federal constitution"); *Commonwealth v. Conte*, 154 Pa.Super. 112, 35 A.2d 742 (1944), *cert. denied*, 323 U.S. 717, 65 S.Ct. 46, 89 L.Ed. 577 (1944) ("there is no legal ground that would justify us in disregarding the pronouncement of the Supreme Court of the United States. It is the final arbiter and final authority with respect to federal questions, and we are bound to follow its mandate."). Of course, Pennsylvanians are free to adopt a constitution providing more rights to its citizens. The question is not whether we can do so, but whether we have already done so with regard to every enumerated right. No decision of which we are aware has either expressly or impliedly held that we have already adopted a constitution which, in all circumstances, provides

Applying this authority it is clear that, contrary to the trial court's conclusion, and because the statement "come on in" cannot be construed as anything other than consent as a matter of law, *Commonwealth v. Morgan, supra*, it is reasonable for police officers to assume that a person answering "come on in" to a knock on the door has, like the individual answering the door in person, apparent authority to consent to the entry into the residence. We hold, therefore, that it is reasonable for officers to assume that an individual answering a knock on the door with a command to "come on in" has the apparent authority to consent to an entry into the premises.[5] For the foregoing reasons, the officers' entry herein was lawful.

## IV. PROBABLE CAUSE TO ARREST

■ Having concluded that the officers lawfully entered the premises, we must now determine whether appellee's arrest was lawful. The Commonwealth contends that probable cause existed to justify appellee's warrantless arrest. Because the officers, armed with the knowledge that a large quantity of drugs, drug paraphernalia and cash had been previously seized from the home, observed appellee flee up a flight of stairs following their entry and announcement of purpose and thereafter discard a pouch, which was found to contain cocaine, in plain view of the officers, the Commonwealth concludes that appellee's warrantless arrest was lawful. We agree.

■ Probable cause exists if the facts and circumstances within the knowledge of the police officer at the time of the arrest are sufficient to justify a person of reasonable caution in believing the suspect has committed or is committing a

greater privacy rights to criminal defendants than does the United States Constitution. Moreover, no Pennsylvania Supreme Court decision specifically rejects *Rodriguez*. In the absence of such decision, we are uninclined to reject otherwise controlling authority of the United States Supreme Court. *Cooper v. Aaron, supra.*

5. Because of our disposition regarding the issue of consent to enter the premises, we need not address the argument that exigent circumstances justified the officers' entry.

crime. *Commonwealth v. Rodriguez*, 526 Pa. 268, 585 A.2d 988 (1991); *Commonwealth v. Elliott*, 376 Pa.Super. 536, 546 A.2d 654 (1988), *alloc. denied*, 521 Pa. 617, 557 A.2d 721 (1989). In determining whether probable cause existed in a particular situation, a court will look not just at one or two individual factors, but will consider the "totality of the circumstances" as they appeared to the arresting officer:

> When we examine a particular situation to determine if probable cause exists, we consider all the factors and their total effect, and do not concentrate on each individual element. . . . We also focus on the circumstances as seen through the eyes of the trained officer, and do not view the situation as an average citizen might. . . . Finally, we must remember that in dealing with questions of probable cause, we are not dealing with certainties. We are dealing with the factual and practical considerations of everyday life on which reasonable and prudent [persons] act.

*Commonwealth v. Simmons*, 295 Pa.Super. 72, 83, 440 A.2d 1228, 1234 (1982), *quoting Commonwealth v. Kazior*, 269 Pa.Super. 518, 522, 410 A.2d 822, 824 (1979). It is only the probability, and not a *prima facie* showing, of criminal activity that is the standard of probable cause for a warrantless arrest. *Commonwealth v. Kloch*, 230 Pa.Super. 563, 327 A.2d 375 (1974). Probable cause exists when criminality is one reasonable inference; it need not be the only, or even the most likely, inference. *See e.g. Commonwealth v. Kendrick*, 340 Pa.Super. 563, 571, 490 A.2d 923, 927 (1985) (probable cause "does not demand any showing that . . . a belief [of criminal activity] be correct or more likely true than false"); *Commonwealth v. Moss*, 518 Pa. 337, 344, 543 A.2d 514, 518 (1988) (in assessing sufficiency of probable cause, the fact that other inferences could be drawn from circumstances does not demonstrate that inference that was drawn by police was unreasonable). As Courts of this Commonwealth have repeatedly emphasized, determinations of probable cause "must be based on common-sense non-technical analysis." *Commonwealth v. Gray*, 509 Pa. 476, 484, 503 A.2d 921, 925 (1985).

Taking a common sense view of the facts presented herein, we are satisfied that the warrantless arrest of appellee was indeed proper. When the officers entered the premises, they were aware that two weeks prior to the date in question, a search of the premises conducted pursuant to a valid search warrant had uncovered a large amount of cocaine, cash and drug paraphernalia. Just hours prior to appellant's arrest, another lawful search had uncovered close to ten-thousand dollars worth of cocaine, cash and a handgun. Therefore, prior to entering the house, the officers knew that a large scale drug operation was operating out of this residence. Upon entering, the officers had reason to believe that those inside were participants in the operation. When appellee fled upon seeing and hearing the officers identify themselves, the officers gave chase. During the chase, appellee discarded a black pouch found to contain cocaine. While each of these facts, if considered separately, may be insufficient to establish probable cause to justify an arrest, taken in combination, these factors supplied the probable cause to justify appellee's arrest. *Commonwealth v. Dennis*, 417 Pa.Super. 425, 431, 612 A.2d 1014, 1016–17 (1992) ("facts insufficient to justify an arrest if considered seperately may in combination supply probable cause"); *quoting Commonwealth v. Simmons*, 295 Pa.Super. 72, 83, 440 A.2d 1228, 1235 (1982). Accordingly, we find that the officers herein had probable cause to believe appellee had committed or was committing a crime when he fled up the stairs of a house known to supply narcotics upon viewing and/or hearing the officers identify themselves and discarded a black pouch. For the foregoing reasons, the order of the trial court suppressing the evidence seized as a result of the officers' entry into the premises and subsequent arrest of appellee is reversed.

Order reversed. Case remanded for proceedings consistent with this opinion. Jurisdiction is relinquished.

McEWEN, J., joined the dissenting opinion by DEL SOLE, J., and joined the dissenting opinion by JOHNSON, J.

DEL SOLE, J., filed a dissenting opinion and joined JOHNSON'S, J., dissenting opinion.

JOHNSON, J., filed a dissenting opinion and joined DEL SOLE'S, J., dissenting opinion.

JOHNSON, Judge, dissenting.

I join in its entirety the Dissenting Opinion by my esteemed colleague, the Honorable Joseph A. Del Sole. I agree with Judge Del Sole that *Commonwealth v. Morgan*, 517 Pa. 93, 534 A.2d 1054 (1987), upon which the Majority principally relies, affords no basis for the Majority's conclusion that apparent authority to consent to a warrantless entry may be found in the words "come on in."

The suppression court found that, on August 24, 1988, Police Officer Sharkey was present at 2292 North Franklin Street when, pursuant to a search warrant, a search was conducted of the premises that revealed narcotics and drug paraphernalia. On September 7, 1988, Officer Sharkey received information from a confidential informant that an Hispanic male known as Juan was selling narcotics from that same address. The same day, Officer Perez, in plain clothes, went to that address in an effort to purchase cocaine. An Hispanic male at the address told Officer Perez that he had no more quarter-ounces of cocaine left but that quarter-ounces could be purchased by going to the corner outside that location.

Based upon this information, Officer Sharkey obtained a search warrant the same day. At approximately 5:30 p.m., Officer Sharkey went with other officers to the address and executed the warrant. Officer Sharkey knocked on the door but received no response. After waiting approximately two minutes, the officers forced open the door to the premises and commenced a search which revealed narcotics and about $145.00 in U.S. currency. Officer Sharkey returned to police headquarters where, at approximately 7:30 p.m., he received a phone call from a confidential informant stating that Juan was back at the residence.

Without a warrant, Officer Sharkey and other officers returned to the address with the intent of arresting Juan. The

officers knocked on the door and were advised to enter by a then-unknown female. After entering, Officer Sharkey arrested Juan Rodriquez and George Quiles. Physical evidence, the subject of this appeal, was taken from Quiles.

Quiles moved that the evidence taken from him be suppressed on the basis that the officers' entry into the home was without a warrant and was not justified by exigent circumstances. The Commonwealth argued initially that the authority conferred by the warrant for the first search that day extended to the subsequent entry, but that the search was also justified by both consent and exigent circumstances.

The suppression court held that, once executed, the warrant could not be relied upon to authorize a subsequent entry. The court found that no evidence was presented from which to conclude that the woman who stated "come in" had actual authority to consent. The court further found that the officer's entry in reliance upon an unknown person's consent was not objectively reasonable. Finally, the court rejected the argument of exigency as well, holding that the evidence presented would not support such a conclusion.

On appeal, the Commonwealth has abandoned its position regarding the continuing authority of the warrant, but renews its arguments as to consent and exigency. The Commonwealth correctly asserts that, even absent a warrant, police may enter a dwelling for the purposes of making an arrest where the entry is either consensual or justified by exigent circumstances. *Commonwealth v. Moye*, 402 Pa.Super. 81, 586 A.2d 406 (1990); *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

Regarding consent, the Commonwealth sought to establish Leslie Rodriguez' authority to consent by establishing that she was a resident of the dwelling. My review of the suppression transcript, however, reveals that the only reference made to Leslie Rodriguez' address was in reference to "one receipt from letters to Juan and Leslie Rodriguez at 2922 North Franklin Street dated 8/31/88." N.T., May 12, 1989, at 27. The suppression court was not persuaded that this evidence, even though uncontested, established Leslie Rodriguez' resi-

dence or authority to consent to the entry. I am not persuaded that this conclusion was erroneous.

The Majority relies upon the decision of the United States Supreme Court in *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) to support its contention that entry by the police in this case was constitutionally permissible. I believe this reliance may be premature. A steady line of case law has evolved under the Pennsylvania Constitution, making clear that Article 1, Section 8 is unshakably linked to a right of privacy in this Commonwealth. *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991). The Pennsylvania Supreme Court, in interpreting this provision, has not been bound by decisions of the United States Supreme Court in interpreting similar federal constitutional provisions. *See e.g. Edmunds, supra* (rejecting the "good faith" exception to the warrant requirement under *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)); *Commonwealth v. Melilli*, 521 Pa. 405, 555 A.2d 1254 (1989) (rejecting the installation of pen registers without probable cause under *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979)); *Commonwealth v. DeJohn*, 486 Pa. 32, 403 A.2d 1283 (1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 704, 62 L.Ed.2d 668 (1980) (upholding the individual right to privacy in one's own bank records, rejecting *United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976)). Our supreme court has stated that Article 1, Section 8 of the Pennsylvania Constitution "may be employed to guard individual privacy rights against unreasonable searches and seizures more zealously than the federal government does under the Constitution of the United States." *Melilli*, 521 Pa. at 412, 555 A.2d at 1258. In light of our supreme court's reluctance to adopt the holdings of the United States Supreme Court which unduly infringe upon the right to privacy of the citizens of this Commonwealth, I am unwilling to join in the Majority's adoption of the holding in *Rodriguez*, absent a statement on these issues by our supreme court.

The Commonwealth also contends that entry into the dwelling to arrest Juan was justified by the exigency of the

circumstances. The concept of exigency recognizes that there are situations where the protection of privacy afforded by the warrant requirement is outweighed by the needs of effective law enforcement. *See Warden, Maryland Penitentiary v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). Exigent circumstances may therefore justify the warrantless entry of a dwelling for the purposes of searching or making an arrest. *Commonwealth v. Williams,* 483 Pa. 293, 396 A.2d 1177 (1978), *cert. denied, Pennsylvania v. Williams,* 446 U.S. 912, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980). The *Williams* Court enumerated several considerations which it found pertinent to a determination of exigency, including: 1) the gravity of the offense, particularly if violent; 2) the reasonable belief that the suspect is armed; 3) the clear showing of probable cause; 4) a strong reason to believe that the suspect is on the premises; 5) the likelihood that the suspect will escape if not quickly apprehended; and, 6) peaceable entry. *Id.,* 483 Pa. at 298–99, 396 A.2d at 1179–80.

The Commonwealth sets forth the *Williams* considerations and urges us to conclude, as it does, that the circumstances were sufficiently exigent to justify a warrantless entry into the dwelling. The Commonwealth posits that the police could reasonably have believed that Juan, the person whom they went to arrest, would flee upon discovering that his residence had been searched if he were not apprehended swiftly. After setting forth the *Williams* analysis, the suppression court concluded that exigency had not been established. While it is not entirely clear that the considerations deemed relevant in *Williams* aid in the inquiry here, I concur with the suppression court's determination that any need to arrest the suspects was not sufficiently urgent to excuse the absence of a warrant.

The contention that Quiles was likely to flee is belied by the fact that he did not flee after the search conducted at the residence two weeks earlier uncovered narcotics. More significantly, there is no evidence in the record that any effort was made to obtain a new warrant in the hours between the search in which probable cause to arrest was found and the return to the dwelling. Further, I am not persuaded that the officers

were unable to secure the premises until a warrant could be procured. As I am unaware of any legitimate interest that was served by foregoing a warrant to re-enter the premises, I would deem this to have been an illegal entry into a dwelling to make an arrest in violation of *Payton, supra.*

I can only conclude that neither consent nor exigent circumstances existed on the facts as found by the suppression court. In the same manner as *Morgan* is misused by the Majority on the issue of apparent authority to consent, the Majority's analysis on the issue of probable cause to arrest assumes too much. The Majority correctly asserts that, when reviewing a Commonwealth appeal from an adverse decision of a suppression court, we may reverse only when the legal conclusions drawn from the facts found by the trial court are erroneous. It also correctly observes that it is the sole province of the suppression court to weigh witness credibility. The fact finder is free to believe all, part or none of the witnesses' testimony.

Nevertheless, Pennsylvania Rule of Criminal Procedure 323(i) makes mandatory the requirement that the suppression hearing judge enter upon the record a statement of findings of fact and conclusions of law. Here, the Honorable Russell M. Nigro did exactly that. The Majority incorporates Judge Nigro's express findings of fact into its Opinion. Majority opinion, pages 155–159. It goes on, however, and attempts to add additional facts to those expressly found by the suppression court, based solely on its belief that "the suppression court found Officer Sharkey credible." It is true that Judge Nigro, on July 6, 1989, declared from the bench:

THE COURT: I think he [Officer Sharkey] was honest and truthful with me to start with.

Notes of Testimony, July 6, 1989, page 12, R.R. 94a.

There is nothing in the record, however, to support the Majority's *sua sponte* supplementation of the findings of fact. As this court recently stated in *Commonwealth v. Lagamba,* 418 Pa.Super. 1, 613 A.2d 1 (1992) *citing Commonwealth v. Hamlin,* 503 Pa. 210, 469 A.2d 137 (1983):

174

The well established judicial principle is that in reviewing a suppression court's ruling the appellate court is bound by factual findings supported by the record and it may not substitute its own findings for those of the suppression court. This principle of deference to trial courts has one important caveat however, appellate courts are not bound by findings wholly lacking in evidence.

An appellate court does not, in the first instance, make findings of fact and conclusions of law. *Commonwealth v. Jackson,* 464 Pa. 292, 298, 346 A.2d 746, 748 (1975). I have found no caselaw which permits a reviewing court to add to the facts expressly found by the trial court, for the purpose of permitting the reviewing court to establish probable cause for an arrest. The focus must be, and remain, on whether the evidence supports *the suppression court's* factual findings and not on whether additional facts might be lifted from the record in order to reach a different conclusion. *Commonwealth v. Smith,* 396 Pa.Super. 6, 7, 577 A.2d 1387, 1388 (1990); *compare Commonwealth v. Haynes,* 395 Pa.Super. 322, 333, 577 A.2d 564, 570 (1990), *appeal denied* 527 Pa. 598, 589 A.2d 689 (1991).

The Majority first accepts the facts found by Judge Nigro at the reconvened suppression hearing. Transcript, July 6, 1989, pp. 17–19, R.R. 99a–101a. Majority opinion, pp. 155–159. It goes on, however, and, based solely on its belief that Judge Nigro found Officer Sharkey credible, proceeds to supplement the suppression court's findings as follows:

. . . . we add the following relevant facts to those of the trial court. Upon entering the premises the second time and announcing their identity, Officer Sharkey and a fellow officer observed a male running up a flight of stairs. The officers gave chase, following the male into the front bedroom, and observed him discard a black leather pouch which proved to contain cocaine. The male, later identified as appellee, George · Quiles, was thereupon arrested and charged with possession of and possession with intent to deliver à controlled substance, and conspiracy.

Majority opinion, pages 157–158. The Majority would seemingly create a new evidentiary rule, binding on future appel-

late courts, that the trier of fact is free to believe all, part or none of a witness' testimony, but once he believes any *part* of that testimony and enters express findings of fact thereon, the reviewing court may then adopt the balance, or remaining parts, of that witness' testimony as facts just as if they had been found by the trial court! I am not prepared to so modify existing divisions of judicial responsibility that have worked so well over time.

The Commonwealth argues that once the officers were lawfully inside, a point that I cannot concede, Quiles' conduct—fleeing from police and discarding a substantial quantity of drugs—provided police with probable cause to arrest him. My esteemed colleagues on the Majority accept this argument. However, acceptance of this argument requires a finding, as fact, that Quiles fled from the police and that he threw down a small, zippered change purse later found to contain drugs. These are two findings which Judge Nigro could have made, based upon the testimony, but clearly did not make. These findings are crucial to any conclusion of probable cause to arrest. Since these findings only occur outside the record certified to us on appeal, I am unable to join my colleagues in adopting the Commonwealth's arguments.

I find neither consent nor exigent circumstances in this warrantless episode. Neither can I find probable cause to arrest Quiles, a then-unidentified male, based solely upon his having been chased up a flight of stairs and into a front bedroom where he dropped a small, zippered change purse. Particularly this is so, where the suppression court has set forth extensive findings of fact but has stopped short of finding that Quiles "fled" up the stairs or that he discarded a pouch in plain view of the arresting officers. Accordingly, I must respectfully dissent. The action of the distinguished suppression court, Judge Nigro, was without error. The order suppressing evidence should be affirmed.

DEL SOLE, Judge, dissenting.

I respectfully dissent from the Majority's ruling in this case because I cannot support its conclusion that the in-home warrantless arrest of Appellee, George Quiles, was valid. In

so ruling the Majority accepts the Commonwealth's argument that the officers' entry into the home in which Quiles was arrested was consensual and that under such circumstances it was unnecessary for the police to announce their identity and purpose. It is with the Majority's initial conclusion, that the entry was consensual, with which I must differ.

The Majority rests its decision on two cases. It begins by citing *Commonwealth v. Morgan*, 517 Pa. 93, 534 A.2d 1054 (1987), which speaks of the requirement of the police to announce their identity and purpose when they are armed with a search warrant and are told by the resident, after observing him inside, to "come on in." The issue in *Morgan* concerned the officer's duty to comply with the "knock and announce rule" prior to executing a search warrant. The court ruled that such compliance was unnecessary where the police already possessed a warrant and where they observed the defendant inside, called the defendant's name and heard him respond to "come on in." Because of these factual differences, I view *Morgan* as non-instructive on the question of whether, in this case, the officers had authority to enter the premises, without a warrant, after knocking and hearing an unidentified voice answering to "come in."

The Commonwealth asserts that it was reasonable in this case for the officers to presume that the female who announced "come in" possessed authority to consent to their entry because they had recovered evidence in a previous search suggesting that a female person lived at the residence. The Commonwealth and the Majority cite *Commonwealth v. Blair*, 394 Pa.Super. 207, 575 A.2d 593 (1990), to support the conclusion that the entry was consensual. The *Blair* court ruled that consent must be judged objectively and that it is reasonable for officers to assume that a person answering a door has authority to consent to entry into the residence.

In *Blair*, the officer knocked on the door of a residence seeking to speak to Mrs. Blair who was suspected of being involved in an automobile accident. The door was answered by Mrs. Blair's neighbor, who did not identify herself but permitted the police officer to enter. Regarding this set of facts the court stated that "the police officer was reasonably

mistaken when he assumed that the woman who answered the door had actual authority to admit him." Although the neighbor in *Blair* had no actual authority, evidence derived from the officer's entry into the home was not suppressed because the police officer was found to have made a "reasonable mistake."

I find the Majority's reliance on this court's decision in *Blair* to be misguided because *Blair* was decided prior to our Supreme Court's decision in *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991). In *Edmunds* the court expressly rejected the analysis undertaken by the United States Supreme Court in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) which concluded that the Fourth Amendment does not mandate the suppression of evidence seized as a result of a constitutionally defect warrant, as long as the officers acted in good faith relying upon a warrant issued by a neutral and detached magistrate. The *Edmunds* court looked to the purpose of Article I, Section 8 of the Pennsylvania Constitution, which prohibits unreasonable searches and seizure, and distinguished it from the purpose of deterring police misconduct underlying the exclusionary rule under the Fourth Amendment. Based upon this distinction, the *Edmunds* court ruled that evidence seized as a result of a search conducted pursuant to a defective search warrant must be suppressed despite the police officer's "good faith" reliance on the warrant. The court remarked on the strong, historically recognized, right to privacy embodied in our Constitution and stated:

> Citizens in this Commonwealth possess such rights, even where a police officer in "good faith" carrying out his or her duties inadvertently invades the privacy or circumvents the strictures of probable cause. To adopt a 'good faith' exception to the exclusionary rule, we believe, would virtually emasculate those clear safeguards which have been carefully developed under the Pennsylvania Constitution over the past 200 years.

*Id.* 526 Pa. at 398, 586 A.2d at 899.

I view the *Edmunds* decision as negatively impacting on this court's holding in *Blair.* I believe the rationale in *Ed-*

*munds* cannot support a ruling that it is reasonable for police officers to assume that a person who answers a door has authority to consent to entry and that, based upon this reasonable belief, a mistake as to authority will be overlooked. *Edmunds* teaches us that the reasonableness of police conduct is irrelevant when examining the strict protections afforded the citizens of this Commonwealth under our Constitution.

In this case the officer's knock was answered by an unidentified female voice announcing to "come in." Absent evidence that the officers knew the identity of the speaker, *See Commonwealth v. Morgan, supra,* (where officer observed the defendant and called his name before defendant answered "come in"), and absent evidence that the speaker had actual authority to consent to the officers' entry into the premises, I would find that a subsequent search was unconstitutional absent exigent circumstances.

Because I find no evidence of exigent circumstances in this case and because the police officers were presented only with a female voice offering them entry to the premises without evidence of this person's actual authority to consent to their entry, I would suppress the evidence seized in this case.