J. A15025/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| JOSHUA SAMUEL BENNETT | : | |
| | : | |
| | : | No. 2417 EDA 2015 |
| | : | |

Appeal from the Order July 8, 2015
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0002123-2015

BEFORE: FORD ELLIOTT, P.J.E., DUBOW, J., and JENKINS, J.

MEMORANDUM BY DUBOW, J.:                    **FILED JULY 13, 2016**

The Commonwealth appeals from the July 8, 2015 Order entered in the Bucks County Court of Common Pleas granting the Motion to Suppress filed by Appellee, Joshua Samuel Bennett. After careful review, we conclude that the trial court erred as a matter of law when it concluded Appellant's arrest had not been supported by probable cause. Accordingly, we reverse the trial court's Order and remand for further proceedings consistent with this Memorandum.

In its Pa.R.A.P. 1925(a) Opinion, the trial court summarized the factual and procedural history as follows.

> On February 25, 2015, Appellee was charged with Driving Under the Influence ("DUI"): Controlled Substance- 1st Offense, DUI: Controlled Substance- Metabolite- 1st Offense, DUI: Controlled Substance- Impaired Ability- 1st Offense and Careless Driving.

On July 7, 2015, Appellee filed a Motion to Suppress, alleging that no probable cause existed for Appellee's DUI arrest.

A hearing was held in front of [the trial court] on Appellee's Motion to Suppress on July 8, 2015. The following evidence was submitted at said hearing.

On January 9, 2015, around 4:16 p.m., Appellee was involved in a single vehicle traffic accident on Central Avenue, Route 309 overpass in Hilltown Township. Appellee was the driver of a car [that] left the paved roadway and struck a tree.

Officer Tucholski, of the Hilltown Township Police Department ("HTPD"), testified that he has been employed as a police officer with Hilltown for approximately eleven (11) years. Prior to this, Officer Tucholski was a deputy sheriff for one (1) year with Montgomery County's Sheriffs Department. Officer Tucholski has received training in the investigation of individuals suspected of driving under the influence of marijuana. Officer Tucholski was first to arrive at the scene of the accident.

When Officer Tucholski arrived, he instructed Appellee to take a seat on the ground as he indicated that he may have suffered a neck or back injury from the crash. Appellee initially obeyed and sat on the ground but then stood back up and continued to stand. Officer Tucholski testified that Appellee appeared disoriented and unsteadily paced about the vehicle. Officer Tucholski further observed that Appellee had watery eyes and was speaking with a slower speech. Appellee told Officer Tucholski that he possibly drove over ice which caused him to lose control of the motor vehicle but Officer Tucholski observed that there was no ice on the road at this time. When asked whether Appellee had a difficult time in answering questions that day, Officer Tucholski answered "no."

During the investigation, Appellee was asked to keep his hands out of his pockets for the safety of the officers at least three (3) times. Officer Tucholski testified that Appellee kept putting his hands back into his pocket. As a result, Officer Tucholski searched Appellee's pockets for weapons. During the search, Officer Tucholski found a soft-pouch containing a multi-colored glass pipe which had what Officer Tucholski believed to be marijuana residue in Appellee's left jacket side pocket. When Appellee stated that he had not smoked marijuana in the past two (2) days, Officer Tucholski testified that it was his belief that

Appellee had smoked more recently. Thereafter, Officer Tucholski advised Appellee that he thought Appellee was under the influence and therefore the police would be requesting a blood sample at the hospital.

When questioned by defense counsel as to why the officers did not conduct a field sobriety test on Appellee, Officer Tucholski answered that he did not want to harm Appellee, who had just been in a car accident with potential injuries that could have been exacerbated. Also, Officer Tucholski testified on cross examination that he did not find any marijuana in the car nor did he smell any marijuana on Appellee. Further, Officer Tucholski testified that the pipe used to smoke marijuana found on Appellee's person was not warm. Finally, Officer Tucholski did not testify that he smelled marijuana in the pipe, although that question was not asked on direct or cross.

One of the other responding officers, Officer John Gildea of the Hilltown Township Police Department, has been a police officer for over twenty (20) years and has been employed with Hilltown for over eighteen (18) years. Officer Gildea is trained in detecting marijuana intoxication and has experience with individuals who are under the influence of marijuana.

Officer Gildea arrived at the scene of the motor vehicle crash and he observed that Appellee had a visible head injury and was bleeding from a wound on his forehead. Officer Gildea also observed that Appellee's eyes were watery and glazed. Officer Gildea testified that Appellee appeared to be unsteady on his feet, dazed, confused, and disoriented. Appellee admitted that he had last smoked marijuana two (2) to three (3) days prior to the accident.

Officer Gildea testified that he did not smell any odor of freshly burnt marijuana on either Appellee or in Appellee's car. Further, no field sobriety tests were conducted. Because there was an accident and that Appellee had a visible head injury, Officer Gildea testified that there was a fifty-fifty chance that Appellee was driving under the influence of marijuana. It follows that the officer testified that there was also a fifty-fifty chance that his observations of Defendant were a result of his head injury. Officer Gildea further noted that the tire tracks showed that Appellee likely did not swerve to avoid an obstacle and he stated that the fact Appellee was involved in a single vehicle accident was an indicator that the driver might be impaired.

There was snow on the sides of the road but the roadway itself was clear.

Trial Court Opinion, dated 8/27/15, at 1-4 (footnotes omitted).

At the close of the hearing, the trial court granted Appellee's Motion to Suppress. *Id.* at 5.

Appellant filed a timely Notice of Appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issue for our review:

Did the trial court err and/or misapply the law in granting suppression of all evidence in this case by finding insufficient probable cause to arrest Appellee for driving under the influence of a controlled substance where, at the scene of a one-vehicle crash, experienced officers made observations of Appellee that, while possibly attributable to Appellee's head injury, were more indicative of being under the influence of a controlled substance, where Appellee made inconsistent statements as to how the crash occurred, reflecting consciousness of guilt, where Appellee admitted to smoking marijuana, albeit on previous days, where Appellee was found in possession of a marijuana pipe, and, where one officer formed the opinion that Appellee was under the influence of a controlled substance to a degree that rendered him incapable of safe driving?

Appellant's Brief at 4.

Our standard of review applicable to suppression determinations is well-settled.

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty it is

to determine if the suppression court properly applied the law to the facts.

***Commonwealth v. Nester***, 709 A.2d 879, 880-81 (Pa. 1998).

The trial court's findings of facts are not at issue in the instant appeal. Rather, Appellant argues that the trial court erred in its conclusions of law when it concluded that the facts did not support the police officers' probable cause determination. Appellant's Brief at 13. After careful review, we agree.

"To be constitutionally valid, a warrantless arrest must, of course, be supported by probable cause." ***Commonwealth v. Evans***, 685 A.2d 535, 537 (Pa. 1996) (citation omitted). Probable cause to stop and arrest a defendant exists when "the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." ***Commonwealth v. Rodriguez***, 585 A.2d 988, 990 (Pa. 1991) (citation omitted). As our Supreme Court has made clear:

> The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require **only a probability**, and not a prima facie showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

***Commonwealth v. Thompson***, 985 A.2d 928, 931 (Pa. 2009) (emphasis in original) (quotation marks and citations omitted).

In applying the totality of the circumstances test, courts are instructed to "consider all the factors and their total effect" and to refrain from "concentrat[ing] on each individual element[.]" **Commonwealth v. Quiles**, 619 A.2d 291, 298 (Pa. Super. 1993) (citation omitted). In addition, it "is important to view **all** of the facts and the totality of the circumstances in order to avoid rendering a decision that is 'totally devoid of the commonsensical inferences that are drawn by trained police officers[.]'" **Commonwealth v. Wells**, 916 A.2d 1192, 1195 (Pa. Super. 2007) (emphasis in original) (citation omitted).

Finally, "[p]robable cause exists when criminality is one reasonable inference; it need not be the only, or even the most likely, inference." **Quiles, supra** at 298. **See also Commonwealth v. Moss**, 543 A.2d 514, 518 (Pa. 1988) (noting that the fact that other inferences could be drawn does not demonstrate that the inference that was drawn by police was unreasonable).

In the instant case, the totality of the circumstances—when viewed through the eyes of a "prudent, reasonable, cautious police officer guided by experience and training"—amply supports the officers' determination that probable cause existed to arrest Appellant for DUI. **Wells**, **supra** at 1195. Appellee was involved in a single-car crash for which he gave conflicting

explanations.[1]  Even though they did not administer a formal field sobriety test due to Appellee's injury, both officers observed Appellee at the scene and noted that (i) he was disoriented and unsteady on his feet, (ii) his speech was unusually slow, and (iii) his eyes were watery and glazed.  In addition, Appellee admitted to the regular use of marijuana and officers recovered a glass pipe with suspected marijuana residue from Appellee's person.  N.T. 7/8/15, at 35-36.  Based on those specific observations and their many years of experience, both officers reasonably believed that Appellee was under the influence of a controlled substance.  *Id.* at 16, 37.

The trial court opined that because Officer Gildea admitted that he could not be certain whether the head wound was the cause of Appellee's appearance of intoxication at the scene, and there was no odor of a prohibited substance, probable cause for Appellee's arrest was not supported.  *See* Trial Court Opinion at 8.  We note that, contrary to the trial court's implication, the Commonwealth was not required to disprove that Appellee's behavior was caused by a head injury suffered in the crash or to prove that there was an odor of an illegal substance.  Rather, the Commonwealth was only required to show that a DUI offense was one

---

[1] When first asked about the accident, Appellee told Officer Tucholski that his vehicle slipped on ice in the roadway.  N.T. 7/8/15, at 31-32.  When Officer Tucholski pointed out that there was no ice on the roadway, Appellee changed his story and claimed to have crashed while avoiding a truck that crossed over into his lane of travel.  *Id.* at 32.  Appellee gave Officer Gildea a third version of events, claiming he swerved to avoid something in the roadway.  *Id.* at 17.

"reasonable inference" to be drawn from the totality of the circumstances at the time of the arrest.  ***Quiles, supra*** at 298.

For the foregoing reasons, we hold that the trial court erred in granting Appellee's Motion to Suppress.  Accordingly, we reverse the trial court's Order and remand for further proceedings consistent with this Memorandum.

Order reversed.  Case remanded.  Jurisdiction relinquished.

President Judge Emeritus Ford Elliott joins the memorandum.

Judge Jenkins concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/13/2016