836 A.2d 893

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Jerome Jason HUGHES, Appellant.**

Supreme Court of Pennsylvania.

Argued May 14, 2003.

Decided Nov. 25, 2003.

448

Paul Watson Muller, Hershey, for Jerome Jason Hughes, Appellant.

Edward Michael Marsico, Jr., Harrisburg, James Patrick Barker, Williamsport, for the Com. of PA, Appellee.

Before: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

### OPINION ANNOUNCING THE JUDGMENT OF THE COURT

Justice NEWMAN.

We granted allocatur in this case to determine whether the Superior Court erred when it affirmed the trial court's denial of a suppression motion, which alleged that the police officers had invalid third party consent to search the approved parole residence of Jerome Jason Hughes (Appellant). After reviewing the claims raised by Appellant, we affirm the decision of the Superior Court.

### Facts and Procedural History

On June 24, 1999, Dauphin County Adult Parole Officer James Vines (Officer Vines) and City of Harrisburg Police Officer Kirk Aldrich (Officer Aldrich) noticed Appellant standing on a corner outside of a bar while they were patrolling an area in Harrisburg. Officer Vines recognized Appellant as one of his parolees and wanted to question him about several recent parole violations.[1] The officers drove around the block in an attempt to speak with him, but by the time they had returned, Appellant had left the corner.

Officer Vines thought that Appellant probably went to the residence approved for his parole located at 115 North 13th Street and, therefore, traveled to that location. At around ten

---

1. These violations included his failure to begin community service, inability to remain employed, and recent arrest. Superior Court Slip Op. at 1.

o'clock p.m., when the officers arrived at the parole residence, there were several teenage girls standing on the front porch. The officers asked the girls if Appellant was home and the girls responded that he was not there. Officer Vines inquired if he and Officer Aldrich could go inside the house to look for Appellant. The girls consented; two of the girls opened the door and followed the officers inside the house.

Once inside the residence, the officers saw yellow headphones similar to the ones that they noticed Appellant wearing earlier in the evening outside of the bar. Officers Vines and Aldrich walked throughout the house looking for Appellant. They looked in his bedroom on the first floor. When they stepped into Appellant's bedroom, they immediately noticed a clear plastic sandwich bag containing marijuana on the headboard of the bed. They also found a blue tinted Ziploc® bag filled with marijuana and another plastic bag containing numerous empty plastic bags.

At that point, the officers determined that they did not want to look for more evidence of drugs and drug paraphernalia until they obtained consent to search Appellant's bedroom from Tracey Griffin (Griffin), the owner of the house. When Griffin arrived, she consented to a full search of the house. The officers thoroughly searched the bedroom of Appellant and found 2.41 grams of crack cocaine, a cellular phone, and a pager hidden in a bedroom closet.

Police arrested Appellant and on December 2, 1999, charged him with two counts of Possession With Intent to Deliver a Controlled Substance [2] and one count of Possession of Drug Paraphernalia.[3] On March 16, 2000, Appellant filed an Omnibus Pre-trial Motion to Suppress the Evidence obtained from the house on the grounds that the police conducted the search in violation of his constitutional right to be free from unreasonable searches and seizures. After holding a Suppression Hearing on April 28, 2000, the trial court, in an Order issued on June 23, 2000, denied the motion of Appellant.

2. 35 P.S. § 780–113(a)(30).

3. 35 P.S. § 780–113(a)(32).

On September 13, 2000, Appellant filed a Motion in Limine in an attempt to prevent the Commonwealth from mentioning his prior drug convictions, alleged parole violations, or any hearsay statements identifying him as the owner of seized property. The trial court granted the motion with regard to the prior criminal record of Appellant, but ruled that any evidence concerning his parole status would be admissible for the purpose of showing how Officer Vines knew Appellant and why he went to meet with Appellant at his approved parole address.

On September 15, 2000, a jury found Appellant guilty on all three counts. The trial court sentenced him to an aggregate sentence of four-to-eleven years' imprisonment. On January 10, 2001, the trial court denied the post-sentence motions filed by Appellant. Appellant appealed to the Superior Court. In a Memorandum Opinion, the Superior Court affirmed the Judgment of Sentence imposed by the trial court.

In affirming the decision of the trial court, however, the Superior Court disagreed with the analysis advanced by the Commonwealth that the parole status of Appellant and his alleged violations alone provided sufficient authority to search his bedroom, considering that parolees have a diminished expectation of privacy. The Superior Court determined that the officers did have reasonable suspicion to believe that Appellant violated his parole, but that the search of his residence for drugs did not reasonably relate to his parole violations for failing to begin community service and maintain employment, or to the parole officer's duty in confirming them. Furthermore, the Superior Court noted that the officers entered the house only to discuss his parole violations with him, and not to search the home for evidence.

Nonetheless, the Superior Court upheld the search as reasonable pursuant to the "apparent authority exception" to the exclusionary rule. The Superior Court has consistently held that warrantless searches based upon the reasonable belief of a police officer that the third party who has given consent to the officers to search has actual authority, will be upheld as reasonable even though that belief was mistaken. Superior

Court Slip Op. at 7; *Commonwealth v. Quiles,* 422 Pa.Super. 153, 619 A.2d 291 (1993); *Commonwealth v. Blair,* 394 Pa.Super. 207, 575 A.2d 593 (1990), *appeal denied,* 526 Pa. 646, 585 A.2d 466 (1991). In this case, the Superior Court determined that the actions displayed by the girls provided the officers with the reasonable belief that they possessed common authority over the premises, which would permit them to provide valid consent to enter the home.

Judge Klein, in a dissenting opinion, stated that he agreed with the majority opinion that a search should be upheld where a police officer reasonably, although mistakenly, believes that a third party has actual authority to consent. Nevertheless, Judge Klein would have determined that it was unreasonable for the police officers in this case to believe that several teenage girls standing on the porch of a house at ten o'clock at night had the requisite authority to consent to a search of the residence.

## Discussion

As previously noted, the issue in this case is whether the Superior Court erred when it affirmed the trial court's denial of a suppression motion made by Appellant alleging that the police officers had invalid third party consent to search his approved parole residence. The resolution of this issue requires an analysis of: (1) the "apparent authority exception" to the exclusionary rule; (2) the proper application of this exception pursuant to the Fourth Amendment to the United States Constitution; and (3) whether such an exception is consistent with the Pennsylvania Constitution and past Pennsylvania jurisprudence.

██ The standard and scope of review for a challenge to the denial of a suppression motion is "whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Hawkins,* 549 Pa. 352, 701 A.2d 492, 504 (1997), *cert. denied,* 523 U.S. 1083, 118 S.Ct. 1535, 140 L.Ed.2d 685 (1998). "When reviewing rulings of a suppression court, we must consider only the evidence of the prosecution and so much of

the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *Id.* at 504–505. "Where the record supports findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error." *Id.* at 505.

Appellant contends that the Superior Court erred in affirming the trial court's denial of his Suppression Motion, because the search conducted by the police officers was allegedly improper due to their failure to obtain legally sufficient consent to enter the residence. The Commonwealth argues that the officers had lawful authority to enter the approved parole residence of Appellant and search for him, considering his outstanding parole violations.[4] We will first address the position of the Commonwealth.

## Parole Exception

■ The parole status of Appellant is significant because a parolee has a diminished expectation of privacy and the Fourth Amendment protections of a parolee are more limited than the protections afforded the average citizen. *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987); *Commonwealth v. Pickron*, 535 Pa. 241, 634 A.2d 1093 (1993). In *Commonwealth v. Williams*, 547 Pa. 577, 692 A.2d 1031 (1997), as a matter of first impression, this Court addressed the degree of authorization that a parole agreement gives a parole officer to search the residence of a parolee. We determined that the Pennsylvania Constitution provides a parolee with no greater protection than the United States Constitution in the area of warrantless searches of a parolee's approved residence, where the parolee has signed a parole agreement in which he agreed to the search of his premises as a condition to the parole. *Id.* This Court ruled that the requirement that a parole officer obtain a warrant supported

4. The Commonwealth did not cross-appeal the decision of the Superior Court because, as the prevailing party, the Commonwealth cannot be said to have been aggrieved by the decision. *See Commonwealth v. Polo*, 563 Pa. 218, 759 A.2d 372 (2001) (a party must have been adversely affected by the decision from which the appeal is to be taken to be considered aggrieved).

by probable cause prior to conducting a search is inapplicable in a parole context because "parole is a form of criminal punishment imposed after a guilty verdict and the states must have the necessary power over parolees in order to successfully administer a parole system as a controlled passage way between prison and freedom." *Id.* at 1035 (citing *Griffin*, 483 U.S. at 873–875, 107 S.Ct. 3164).

Despite the diminished expectation of privacy afforded parolees, the Superior Court correctly determined that the officers in this case may not have had sufficient grounds to conduct a parole search of the approved residence of Appellant. In *Williams*, this Court ruled that by signing a parole agreement, a parolee has provided limited consent for a parole officer to conduct reasonable searches of his home. *Id.* at 1036. A search is only reasonable where the totality of the circumstances demonstrates that: (1) the parole officer had reasonable suspicion to believe that the parolee committed a parole violation; and (2) the search was reasonably related to the duty of the parole officer. *Id.* The officers in the matter *sub judice* had reasonable suspicion to believe that Appellant violated his parole; they knew that he failed to start community service, that he was unemployed, and that he had a recent arrest. Nonetheless, the search of his approved parole residence may not have been reasonably related to any of these violations or to the duty of the parole officer in confirming them. Therefore, it may appear that the officers did not have sufficient grounds to conduct a parole search.

If the officers did not have sufficient grounds to conduct a parole search, we must next consider whether the Superior Court correctly affirmed the determination of the trial court that it was reasonable for the officers to believe that the girls on the porch had authority to consent.

### Third Party Consent to a Search Exception

Appellant avers that the police officers violated his right to be free from unreasonable searches and seizures pursuant to the Fourth Amendment to the United States

Constitution[5] and Article I, Section 8 of the Pennsylvania Constitution,[6] because they allegedly failed to obtain legally sufficient consent prior to searching his approved parole residence. Warrantless searches and seizures are considered to be unreasonable and therefore, prohibited, except for a few established exceptions pursuant to both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Commonwealth v. Kohl*, 532 Pa. 152, 615 A.2d 308 (1992).

■■■ Both the federal and Pennsylvania constitutions permit third party consent to a search. *Schneckloth; Commonwealth v. Latshaw*, 481 Pa. 298, 392 A.2d 1301 (1978), *cert. denied*, 441 U.S. 931, 99 S.Ct. 2050, 60 L.Ed.2d 659 (1979) (plurality opinion). When police officers obtain the voluntary consent of a third party who has the authority to give consent, they are not required to obtain a search warrant based upon probable cause. *Schneckloth*, 412 U.S. at 219, 93 S.Ct. 2041. In *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), the Supreme Court explained that a third party possessing common authority over a premises can give valid consent to search against a non-consenting person who shares authority because "it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be

**5.** The Fourth Amendment to the United States Constitution, which is applicable to the States through the Fourteenth Amendment, provides that:

the right of the people to be secure in their persons, houses, papers, and effect, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

**6.** Article I, Section 8 of the Pennsylvania Constitution mandates that:

the people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to scize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

searched." *Id.* at 171, n. 7, 94 S.Ct. 988. However, the "third party consent to a search exception" does not apply in this case because the girls who provided the consent to search the domicile did not have common authority over Appellant's approved residence.

## Apparent Authority Exception

In *Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), the Supreme Court addressed the issue of whether a warrantless entry is valid when it is based upon the consent of a third party who the police, at the time of entry, reasonably believe possesses common authority over the premises, but who in fact may not have such authority. The *Rodriguez* Court affirmatively answered this question by adopting what has since been called the "apparent authority exception." The United States Supreme Court repeated its previous determination that:

> [b]ecause many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability.

*Id.* at 186, 110 S.Ct. 2793 (citing *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). The basis for the authority that exists is the type of "recurring factual question to which law enforcement officials must be expected to apply their judgment; and all the Fourth Amendment requires is that they answer it reasonably." *Id.* The Court reasoned that "[t]he Constitution is no more violated when officers enter without a warrant because they reasonably (though erroneously) believe that the person who has consented to their entry is a resident of the premises, than it is violated when they enter without a warrant because they reasonably (though erroneously) believe they are in pursuit of a violent felon who is about to escape." *Id.* at 186, 110 S.Ct. 2793. However, the *Rodriguez* Court explained that:

> [a]s with other factual determinations bearing upon search and seizure, determination of consent to enter must be

judged against an objective standard: would the facts available to the officer at the moment ... warrant a man of reasonable caution in the belief that the consenting party had authority over the premises? If not, then warrantless entry without further inquiry is unlawful unless authority actually exists. But if so, the search is valid.

*Id.* at 188–189, 110 S.Ct. 2793 (citation omitted).

■ In this case, the officers approached the approved parole residence of Appellant. Once they arrived, they noticed three teenage girls standing on the porch. They inquired whether Appellant was home and the girls responded that he was not. When Officer Vines asked the girls whether he and Officer Aldrich could enter the home and look for Appellant, they responded, "no problem," and **opened the door for them.** Notes of Testimony (N.T.), 4/28/00, at 11–12. The girls voluntarily gave the officers consent to enter the home; they did not hesitate in giving the officers their consent—they even opened the door to the residence for the officers. Additionally, the girls followed the officers into the house. The actions of the girls provided the officers with the reasonable belief that the girls possessed common authority over the premises permitting them to provide valid consent to enter the residence. The Fourth Amendment to the United States Constitution only requires police officers to act reasonably when determining whether authority to consent is present. We believe that Officers Vines and Aldrich acted reasonably. Therefore, we conclude that based on the totality of the circumstances, the police officers reasonably believed that the teenage girls standing on the porch had valid authority to allow them to enter the house. Appellant's argument, therefore, fails pursuant to the Fourth Amendment to the United States Constitution.

■ Because we have determined that apparent authority existed pursuant to the Federal Constitution we must now conduct an independent analysis of the Pennsylvania Constitution to determine whether Article I, Section 8 affords Appellant more protection than its federal counterpart. Whether a

search is valid where an officer is reasonably mistaken as to the actual authority of the party that consented to his entry into the premises is an issue of first impression for this Court.

Although the language utilized in Article I, Section 8 of the Pennsylvania Constitution is similar to that in the Fourth Amendment to the United States Constitution, the decisions of the United States Supreme Court are not dispositive of questions regarding the rights guaranteed to citizens of this Commonwealth pursuant to the Pennsylvania Constitution. *Commonwealth v. Tarbert,* 517 Pa. 277, 535 A.2d 1035 (1987) (plurality opinion). "[W]e are not bound to interpret the two provisions as if they were mirror images, even where the text is similar or identical." *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887, 895–896 (1991). In *Edmunds,* we explained that:

[h]ere in Pennsylvania, we have stated with increasing frequency that it is both important and necessary that we undertake an independent analysis of the Pennsylvania Constitution each time a provision of that fundamental document is implicated. Although we may accord weight to federal decisions where they are found to be logically persuasive and well reasoned, paying due regard to precedent and the policies underlying specific constitutional guarantees, we are free to reject the conclusions of the United States Supreme Court so long as we remain faithful to the minimum guarantees established by the United States Constitution.

*Id.* at 894–895.

This Court considers the following four factors when establishing whether the Pennsylvania Constitution affords greater protection than the Federal Constitution:

(1) text of the Pennsylvania constitutional provision;

(2) History of the provision, including Pennsylvania case-law;

(3) related case-law from other states; [and]

(4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence.

*Id.* at 895.

 When examining the text of Article I, Section 8, this Court has repeatedly stated that this constitutional provision embodies a strong notion of privacy, and has held that the section often provides greater protection than the Fourth Amendment to the United States Constitution because "the core of its exclusionary rule is grounded in the protection of privacy while the federal exclusionary rule is grounded in deterring police misconduct." *Williams,* 692 A.2d at 1038; *see Edmunds,* 586 A.2d at 897.

 In *Edmunds,* this Court addressed the question of whether Pennsylvania should adopt the "good faith exception" to the exclusionary rule as articulated by the Supreme Court of the United States in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). We refused to adopt this exception, determining that it would frustrate the guarantees embodied in Article I, Section 8 of our Constitution. *Id.* However, there is no relationship between the "good faith exception" that we addressed in *Edmunds* and the "apparent authority exception." [7] The "good faith exception" analyzed in *Edmunds* is based on the notion that illegally seized evidence obtained pursuant to a constitutionally defective search warrant does not need to be suppressed as long as the police officer acted in good faith upon the warrant issued by a neutral and detached magistrate. *Id.* The adoption of the "good faith exception" would have been inconsistent with Pennsylvania Rules of Criminal Procedure, and with the heightened expectation of privacy that the Constitution affords our citizens. *Id.* Unlike *Edmunds,* there are no cases or rules

7. Indeed, two of the four states cited by this Court in *Edmunds,* which rejected the good faith exception, have adopted the apparent authority exception. *See State v. Maristany,* 133 N.J. 299, 627 A.2d 1066 (1993); *see also People v. Adams,* 53 N.Y.2d 1, 439 N.Y.S.2d 877, 422 N.E.2d 537 (1981), *cert. denied,* 454 U.S. 854, 102 S.Ct. 301, 70 L.Ed.2d 148 (1981).

suggesting that there is a distinction between the Pennsylvania and United States Constitutions with regard to consent to enter a premises. Rather, this Court has interpreted consent to enter a premises consistent with the interpretation of the United States Supreme Court. *See Latshaw*, 392 A.2d at 1305.

The "apparent authority exception" stems from the "third party consent to a search exception" to the exclusionary rule. When police officers obtain the voluntary consent of a third party, who has the authority to give consent, they are not required to obtain a search warrant based on probable cause. *Commonwealth v. Stanley*, 498 Pa. 326, 446 A.2d 583 (1982). A co-inhabitant of a residence does not have a reasonable expectation of privacy that society is willing to protect in the third party consent context. He or she should recognize that any of the co-inhabitants of the residence have the right to permit the inspection of the premises in their own right. Therefore, by virtue of living in a residence with other inhabitants, a co-inhabitant assumes the risk that one of the residents may permit the common area to be searched. The "apparent authority exception" allows the admission of evidence where the police officers reasonably, and even mistakenly, relied upon the consent of a third party who did not have actual authority to consent to the search. The question of reasonableness is paramount to the functioning of this exception. Police officers must make further inquiries to determine the status of a consenting party, where the situation is ambiguous and would cause a reasonable person to question the authority of the party who gave consent or where the authority of the party who gave consent appears to be unreasonable. *Rodriguez*, 497 U.S. at 189, 110 S.Ct. 2793.

The Superior Court has adopted the "apparent authority exception." Superior Court Slip Op. at 7; *see Commonwealth v. Quiles*, 422 Pa.Super. 153, 619 A.2d 291 (1993); *Commonwealth v. Blair*, 394 Pa.Super. 207, 575 A.2d 593 (1990), *appeal denied*, 526 Pa. 646, 585 A.2d 466 (1991).[8] In adopting this

**8.** The opinion of the Superior Court in *Blair* was written prior to this Court's decision in *Edmunds*, which explained that the exclusionary

exception, the Superior Court explained that this exception does not permit *carte blanche* searches based on consent. *Id.* The reasonable mistake of the police officer must be judged from an objective standard based upon the totality of the circumstances. *Id.*

We are persuaded by the majority of state courts that have adopted the reasoning of the Supreme Court of the United States and determined that apparent authority alone is sufficient. *See State v. Licari*, 659 N.W.2d 243 (Minn.2003) (apparent authority alone exists if authority claimed by third party would, if true, be sufficient to satisfy the legal test for actual authority); *State v. Taylor*, 114 Nev. 1071, 968 P.2d 315 (1998) (apparent authority alone is required); *People v. Hopkins*, 870 P.2d 478 (Colo.1994) (warrantless search is not invalid merely because of a reasonable mistake of fact made by the police officers concerning the authority of the party consenting to the search); *State v. Maristany*, 133 N.J. 299, 627 A.2d 1066 (1993) (consent to search may be obtained from a third party whom police reasonably believe has authority to consent); *State v. Girdler*, 138 Ariz. 482, 675 P.2d 1301 (1983), *cert. denied.*, 467 U.S. 1244, 104 S.Ct. 3519, 82 L.Ed.2d 826 (1984) (apparent authority to consent alone is required); *Nix v. State*, 621 P.2d 1347 (Alaska 1981) (apparent authority alone of third party to allow entry by police is required); *People v. Adams*, 53 N.Y.2d 1, 439 N.Y.S.2d 877, 422 N.E.2d 537 (1981), *cert. denied*, 454 U.S. 854, 102 S.Ct. 301, 70 L.Ed.2d 148 (1981) (where searching officers rely on the apparent capability of a person to consent to a search and the circumstances reasonably indicate that the individual does, in fact, have the authority to consent, evidence obtained during that search should not be suppressed); *People v. Gorg*, 45 Cal.2d 776, 291 P.2d 469 (1955) (evidence obtained by officers as a result of a search could not be excluded merely because the officers might have made a reasonable mistake as to the extent of the authority of the third person).

rule in Pennsylvania is not based on deterrence. *Quiles* was decided after *Edmunds*, however, the Superior Court distinguished the good faith exception and the apparent authority exception.

The rationale for this approach derives from the fact that the Fourth Amendment protects against unreasonable searches and seizures and, therefore, if the police officers act in a reasonable manner in response to the situation with which they are confronted, an error in judgment regarding the actual authority of a person to consent to a search would not give rise to an unreasonable search. *But see State v. McLees,* 298 Mont. 15, 994 P.2d 683 (2000) (in order for a third party to give valid consent to a search against a defendant, the third party must have actual, not merely apparent, authority to do so); *State v. Lopez,* 78 Hawai'i 433, 896 P.2d 889 (1995) (the consent of a third party can not validate a warrantless search unless the third party possessed authority to consent).

 While we recognize that Article I, Section 8 of the Pennsylvania Constitution affords our citizens greater protections than the Fourth Amendment to the United States Constitution, we do not believe that requiring apparent authority alone is inconsistent with our Constitution. Article I, Section 8 provides that people must be free from unreasonable searches and seizures. Because the officers' belief that they obtained consent from a third party who had common authority over a premises must be reasonable for the "apparent authority exception" to apply, police officers should not be required to obtain a search warrant based upon probable cause where they have apparent authority to conduct a search. A person's privacy rights are no more violated when a third party with actual authority to consent permits police officers to enter a residence than when a person at the house with apparent authority consents to the entry of the police officers into the premises.

 Nevertheless, we need not reach the question of whether the "apparent authority exception" should be applied in situations involving the average citizen because Appellant is a parolee and, consequently, he has a diminished expectation of privacy. *See Williams, supra.* We have determined that the Pennsylvania Constitution provides a parolee with no greater protection than the United States Constitution in the

area of warrantless searches where the parolee has signed a parole agreement in which the parolee agreed to the search of his premises as a condition to the parole. *Id.* Because we conclude that evidence obtained as a result of the search conducted by Officers Vines and Aldrich should be upheld pursuant to the Federal Constitution, we now hold that this evidence must also be upheld pursuant to the Pennsylvania Constitution.

## Conclusion

Accordingly, we affirm the decision of the Superior Court that affirmed the trial court's denial of the suppression motion filed by Appellant.

Justice SAYLOR files a concurring opinion.

Justice LAMB files a concurring opinion.

Chief Justice CAPPY files a dissenting opinion in which Justice NIGRO joins.

Justice SAYLOR concurring.

I agree with Mr. Chief Justice Cappy's analysis regarding the majority's application of the apparent authority exception under the present circumstances. *See* Dissenting Opinion at 470–72, 836 A.2d at 907–08. I nevertheless concur in the majority disposition, as I agree with Mr. Justice Lamb that the warrantless search of Appellant's approved parole residence in order to locate him was valid under the parole exception. I write only because I would treat the two aspects of that exception distinctly.

As a threshold matter, in the absence of consent or a statutory framework, the Fourth Amendment to the United States Constitution prohibits the warrantless search of a parolee's residence based upon reasonable suspicion. *See Commonwealth v. Pickron,* 535 Pa. 241, 249–50, 634 A.2d 1093, 1098 (1993). The Court subsequently addressed the issue of consent in *Commonwealth v. Williams,* 547 Pa. 577, 692 A.2d 1031 (1997), and held that, where a parolee signs a parole

agreement giving his parole officer permission to conduct a warrantless search, the search will be deemed reasonable if the totality of the circumstances demonstrates that: (1) the parole officer had a reasonable suspicion that the parolee committed a parole violation; and (2) the search was reasonably related to the parole officers duty. *See id.* at 588, 692 A.2d at 1036. In addition, the General Assembly added Section 27b to the Probation and Parole Act,[1] which authorizes, *inter alia*, the search of real property in the possession of or under the control of a parolee where there is reasonable suspicion to believe that such property contains "contraband *or other evidence of violations of the conditions of supervision.*" 61 P.S. 331.27b(d)(2) (emphasis added). Thus, *Williams* and Section 27b provide alternate bases for upholding a search under the parole exception.

In my view, the search of Appellant's approved parole residence was valid under both. Initially, there is no dispute that Officer Vines had reasonable suspicion to believe that Appellant violated his parole. *See* Majority Opinion, at 458, 836 A.2d at 899. I am, therefore, of the view that the officer's conduct, in searching Appellant's residence to locate him and discuss those violations, was "reasonably related to the parole officer's duty" of confirming those violations. In addition, I would hold that the search was statutorily authorized, since, as observed by Mr. Justice Lamb, it was based upon reasonable suspicion that the residence contained "evidence of violations of the conditions of supervision," namely, evidence that could be obtained by speaking to Appellant himself.

Justice LAMB concurring.

The Commonwealth offered two theories in resisting Appellant's suppression motion below: (1) that the search was lawful given the reduced expectation of privacy on the part of parolees and the authority given to parole agents to conduct warrantless searches codified at Section 27.2b(b) of the Act of

1. Act of Aug. 6, 1941, P.L. 861, No. 323, § 27.2, *added by* Act of Nov. 17, 1995, P.L. 1139, No. 35 (Spec. Sess. No. 1), § 1 (codified at 61 P.S. § 331.27b).

August 6, 1941, P.L. 861, No. 323, *added by* the Act of November 17, 1995, P.L. 1139, No. 35, 61 P.S. § 331.27b; and (2) the third party consent to enter the residence given by the teenage girls who opened the door and accompanied the officers into the building. The trial court, the Superior Court, and the instant majority have rejected theory (1) while accepting theory (2). I write separately to indicate my view that the search was lawful not under theory (2) but under theory (1).

As Judge Klein reasoned in dissent below, the officers here had no objective reason to believe that the teenage girls possessed authority to consent to the search. Neither did the officers pose any questions to the girls in an attempt to explore the nature and origin of any authority they might possess. All that was known was that the girls were present outside the residence and that they opened the (apparently unlocked) door and accompanied the officers inside. These facts include no objective indicia of consensual authority. Moreover, the knowledge of Parole Officer Vines concerning Appellant's familial and living circumstances provided no basis for and, in fact, militated strongly against any conclusion that these girls possessed such authority.

On the other hand, the circumstances (including Appellant's presence at a nearby corner just minutes earlier wearing distinctive yellow headphones and the observation of those same headphones immediately inside the residence) were more than sufficient to indicate that Appellant was present somewhere within the residence. However, as it reasonably appeared to the officers, the teenage girls, for reasons unknown, were falsely denying Appellant's presence. In my view, these facts are sufficient, in the case of a parolee like Appellant who has consented in advance to warrantless searches of his residence by his parole agent, to justify a cursory inspection of each room of the residence, beginning with Appellant's room, sufficient only to determine whether Appellant was present. It appears that this is the course taken by the officers. The officers' plan to discuss with Appellant his recent reported parole violations was a legitimate part of the investigation of "violations of the conditions

of supervision" for which authority to conduct a warrantless search of a parolee's property has been granted by 61 P.S. § 331.27b(d)(2). Moreover, the circumstances expressly justifying the conduct of a warrantless search of a parolee's residence by a parole officer as codified at 61 P.S. § 331.27b(d)(6)(viii) include "[t]he need to verify compliance with the conditions of supervision"; precisely the subject on which the officers here wished to question Appellant. I would hold that the decision of the suppression court was correct on these grounds.

Chief Justice CAPPY dissenting.

Unequivocal, specific, and voluntary consent will validate an otherwise illegal search. *Commonwealth v. Gibson*, 536 Pa. 123, 638 A.2d 203 (1994). I join with the majority in recognizing that a third party with apparent authority over the area to be searched may provide the police with consent to conduct a search. *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). Third-party consent is valid when a police officer reasonably believes a third party has authority to consent, even if the belief was mistaken. *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). Where I depart from the majority is in its conclusion that on the facts of this case, the officers, at the time of entry, reasonably believed that the group of 12– to –14–year–old girls standing on the porch had authority to provide unequivocal, specific, and voluntary consent to conduct an otherwise illegal search. Thus, because the majority finds that the facts justify the search in this case under the doctrine of "apparent authority," I am compelled to dissent.

Third-party consent is a derivative of the generally recognized concept of consent, which permits police to conduct warrantless searches after obtaining voluntary consent from a third party possessing common authority over a premise. *Matlock, supra.* This "apparent authority" exception turns on whether the facts available to the police officer at the moment would lead "a man of reasonable caution" to believe that the consenting third party had authority over the premises. *Rod-*

*riguez,* 497 U.S. at 188, 110 S.Ct. 2793 (1990) (citing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).[1] As the majority notes, if a reasonable person would question the consenting party's actual authority, a police officer is required to establish whether the consenting party has authority. (Majority opinion at 464–65, 836 A.2d at 903).

In this case, the officers approached the residence at night and saw two or more young girls standing on the porch.[2] The officers asked the girls whether Appellant was home. When told "no," the officers asked if they could enter the home to look for Appellant. The girls responded, "no problem," opened the door for the officers, and followed them in. (Suppression hearing, 4/28/2000 at 10 and 27).

The majority relies on the actions of the girls as providing the officers with a reasonable belief that the girls possessed the authority to consent to the officers' entry into the residence. The majority holds the girls' actions of opening the door for the officers and following them in as justifying the officers' mistaken belief of authority. (Majority opinion at 461, 836 A.2d at 901).

1. Although this Court has not previously addressed this exception, the Superior Court has addressed it in *Commonwealth v. Blair,* 394 Pa.Super. 207, 575 A.2d 593 (1990) and *Commonwealth v. Quiles,* 422 Pa.Super. 153, 619 A.2d 291 (1993). In *Blair,* a police officer knocked on the door of Mrs. Blair's residence. A woman inside answered the door. 575 A.2d at 596. After the officer inquired whether "Mrs. Blair" was home, the woman invited him into the residence. *Id.* The court in *Blair* held that when an individual answers the door at a residence it is reasonable for a police officer to assume the individual has the authority to consent to entry into the residence. *Id* at 598. In *Quiles,* police officers arrived at a residence known for drug activity. *Quiles,* 619 A.2d at 293. They knocked on the door, and an unknown woman inside responded "come in." *Id.* The court held that it is reasonable for a police officer to assume that an individual who responds "come in" to a knock at a door has the apparent authority to consent to entry into the premises. *Id.* at 297.

2. The officers were unsure of how many young girls were on the porch at the time. The first officer testified only that there was more than one girl, while the second officer testified that there were three. The second officer also testified that he thought the girls were between the ages of 12 and 14. (Suppression hearing, 4/28/2000 at 18 and 32, 33).

I disagree with the majority. I believe that under these circumstances, a reasonable person would question whether the girls had actual authority to consent. First, the individuals who provided consent in this case were minors. Second, upon the arrival of the officers, the individuals were outside the residence. Additionally, one of the officers was Appellant's parole officer who had been to the residence on at least four prior occasions and had never seen these or any other young girls at the residence. The officer testified that to his knowledge Appellant, his girlfriend, and his girlfriend's mother, the owner of the house, were the only residents living there. Moreover, as the majority acknowledges, the officers halted their search of the residence prior to entering Appellant's bedroom to await consent from the owner of the residence.

Contrary to the majority, I would find that the officers did not obtain unequivocal, specific, and voluntary consent to search the premises, as they could not reasonably believe that 12– to 14–year–old girls, hanging out on a summer evening, had apparent authority to provide valid consent. At the very least, the officers had an obligation to make further inquires of the young girls before they blithely accepted the "consent" that was offered and entered a private residence. Accordingly, I would reverse the Superior Court's order affirming the trial court's denial of Appellant's suppression motion.[3]

Justice NIGRO joins this dissenting opinion.

---

**3.** Further, I do not accept the position of Mr. Justice Lamb as set forth in his concurring opinion. This search was not justified under the reduced expectation of privacy afforded parolees. On this point I join in the majority's conclusion that Appellant's status as a parolee does not impact the decision in this case as it does not appear that the parole officers possessed reasonable suspicion that Appellant committed a parole violation sufficient to justify a parole search. (Majority opinion at 458–60, 836 A.2d at 899–900).