## Commonwealth v. Stewart

*Nathan Boob,* for Commonwealth.
*Karen G. Muir,* for defendant.

GRINE, *P.J.,* January 20, 2009—Presently before the court is a motion to dismiss due to illegal search and seizure and a motion for processing of evidence filed by counsel for defendant, William M. Stewart. Defendant is charged with possession of a small amount of marijuana (35 P.S. §780-113(a)(31)(M)) and possession of drug paraphernalia (35 P.S. §780-113(a)(32)(M)).[1] De-

---

1. The state also charged defendant with possession of a controlled substance—cocaine pursuant to 35 P.S. §780-113(a)(16)(M); however, the district attorney assigned to the case agreed to dismiss this charge

fendant requests suppression of evidence seized from his home on the grounds that his estranged wife, Stacy Stewart, lacked actual or apparent authority to consent to a police search. A hearing on these motions was held on November 20, 2008. At the conclusion of the hearing, the court ordered both parties to submit findings of fact and conclusions of law. After careful consideration, the court now renders its decisions.

## FINDINGS OF FACT

(1) Wife shares custody of their two children with defendant but does not live in defendant's home. Her name does not appear on the deed to defendant's house.

(2) On May 19, 2008, defendant asked his estranged wife to his home to care for their children while he went to the hospital emergency room.

(3) While babysitting, Wife discovered a suspicious white powder inside a bowl containing a razor blade and straw atop the refrigerator in the kitchen.

(4) Suspecting the substance to be cocaine, Wife dialed 911 and requested an officer come to defendant's home to remove it.

(5) Shortly thereafter, Officer J.D. Tlumac was dispatched to investigate Wife's claims that the home contained cocaine.

---

after receiving a report from the Pennsylvania State Police indicating that neither the white powder, straw, nor razor blade removed from defendant's home tested positive for cocaine.

(6) The 911 dispatcher advised Officer Tlumac that Wife did not live at the home and was there babysitting because defendant had to go to the emergency room.

(7) When Officer Tlumac arrived, Wife ushered him into the home and insisted he immediately remove the suspected drugs.

(8) Wife led Officer Tlumac to the kitchen where the officer confirmed the presence of the white powder atop of the refrigerator.

(9) Officer Tlumac testified he could clearly see the bowl containing the white power atop the refrigerator and believed the powder to be contraband because it possessed the characteristics of cocaine and was found near tools commonly used in the consumption of cocaine.

(10) Officer Tlumac seized the white powder, bowl, razor blade, and straw for further processing.

(11) After seizing the suspicious white powder and its accompanying paraphernalia from atop the refrigerator, Officer Tlumac conducted a visual sweep of the surrounding areas.

(12) During this inspection, Officer Tlumac spotted a rolled, plastic cellophane bag filled with "green vegetable matter" on a nearby pantry shelf.

(13) Officer Tlumac noticed the substance inside the cellophane bag mirrored the texture of marijuana and he decided to seize the bag and its contents.

(14) All evidence seized was in plain view; Officer Tlumac did not move any objects or disturb his surroundings to discover it.

## CONCLUSIONS OF LAW

(1) "Both the [F]ederal and Pennsylvania constitutions permit third party consent to a search." *Commonwealth v. Hughes,* 575 Pa. 447, 459, 836 A.2d 893, 900 (2003) (opinion announcing judgment of the court). (citations omitted) See also, *United States v. Matlock,* 415 U.S. 164, 171 (1974).

(2) "When police officers obtain the voluntary consent of a third party who has the authority to give consent, they are not required to obtain a search warrant based upon probable cause." *Hughes* at 459, 836 A.2d at 900.

(3) "The 'apparent authority exception' allows the admission of evidence where the police officers reasonably, and even mistakenly, relied upon the consent of a third party who did not have actual authority to consent to the search." *Hughes* at 464, 836 A.2d at 903, adopting the standard announced in *Illinois v. Rodriguez,* 497 U.S. 177, 188-89 (1990).

(4) To determine whether an officer's mistake was reasonable, the court evaluates the totality of circumstances to determine whether facts available to police at the moment would lead a person of reasonable caution to believe the consenting third party had authority over the premises. *Hughes* at 465, 836 A.2d at 903-904.

(5) In *Commonwealth v. Hughes,* 575 Pa. 447, 836 A.2d 893 (2003), the Supreme Court of Pennsylvania determined it was reasonable for officer to assume teenage girls outside of premises had the apparent authority to allow a search of a parolee's residence.

(6) In *Commonwealth v. Blair,* 394 Pa. Super. 207, 575 A.2d 593 (1990), *appeal denied,* 526 Pa. 646, 585 A.2d

466 (1991), the Superior Court of Pennsylvania upheld third-party consent to police entry given by a neighbor whom the officer knew was not the owner or resident of the premises to be searched.

(7) In *Commonwealth v. Quiles,* 422 Pa. Super. 153, 619 A.2d 291 (1993), the Superior Court held that it is reasonable for an officer to assume a person inside a premises who says "come on in" has the power to grant consent to police entry.

## DISCUSSION

Based on the facts known to the responding officer at the time, it was reasonable to believe defendant granted the baby sitter authority to allow police entry. When the officer responded, he knew Wife was baby-sitting children at defendant's home. Although he knew she did not live there permanently, he knew Wife had defendant's permission to be inside the home. When Officer Tlumac approached the door, Wife ushered him inside and at all times acted as though she had authority to allow police entry. At all times, Wife remained adamant that an officer remove the drugs in order to keep them away from the children currently in the home.

Once inside the home, the officer did not need to conduct a search to discover the items in question. Officer Tlumac testified that both the bowl with the white powder and the cellophane bag with the green vegetable matter were in plain sight. He did not disturb the surroundings in any way before recognizing the items as contraband. The officer's movements were restricted to common areas of the kitchen and living room. The officer was in the home for a short duration of time and never opened closed doors or entered other areas of the home.

Furthermore, several Pennsylvania cases support the reasonableness of an officer's belief even if the third person granting consent does not have actual ownership rights in the searched premises. In *Commonwealth v. Hughes,* 575 Pa. 447, 836 A.2d 893 (2003), the Supreme Court of Pennsylvania determined it was reasonable for officer to assume teenage girls outside of premises had the apparent authority to allow a search of a parolee's residence. In *Commonwealth v. Blair,* 394 Pa. Super. 207, 575 A.2d 593 (1990), *appeal denied,* 526 Pa. 646, 585 A.2d 466 (1991), the Superior Court of Pennsylvania upheld third-party consent to police entry given by a neighbor whom the officer knew was not the owner or resident of the premises to be searched. In *Commonwealth v. Quiles,* 422 Pa. Super. 153, 619 A.2d 291 (1993), the Superior Court held that it is reasonable for an officer to assume a person inside a premises who says "come on in" has the power to grant consent to police entry.

The facts in *Blair* and the facts of the instant case sufficiently align. *Commonwealth v. Blair,* 394 Pa. Super. 207, 218, 575 A.2d 593, 598-99 (1990). Both the defendant and the defendant in *Blair* protest reasonableness of a consent granted by a non-tenant, non-owner. Both cases involved an officer being ushered into the home by a person acting as though they have consent. Both cases involve evidence seized in plain sight.

In *Blair, id.,* the responding police officer knew that the woman who answered the door was not the owner. The officer asked the woman if the owner of a vehicle parked outside was home. The woman responded affirmatively and ushered the officer inside the residence

where "the officer almost immediately saw [evidence to be seized] in plain view." *Id.* The court found that under these facts, the officer was "reasonably mistaken when he assumed that the woman who answered the door had actual authority to admit him." *Id.*

Based on the Commonwealth's interpretation of the apparent authority exception and the facts known to responding officer at the time he entered defendant's home, the court concludes it was reasonable for Officer Tlumac to believe Wife had the authority to allow police entry into defendant's home. Therefore, the court denies defendant's motion to dismiss.

Notwithstanding legal entry by the police, the court finds circumstances of the case necessitate further processing of evidence recovered from defendant's home. Currently, defendant and his wife are litigating custody of their two children. At the time drugs were found in defendant's home, Wife was the only adult present. Most compelling, however, is that Pennsylvania State Police laboratories indicated the white powder, straw, and razor blade removed from defendant's home did not contain cocaine. The court finds these facts persuasive and grants defendant's motion for processing of evidence.

## ORDER

And now, January 20, 2009, the following is ordered:

(1) Defendant's motion to dismiss due to illegal search and seizure is denied.

(2) Defendant's motion for processing of evidence is granted.