J-A26031-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| DAVON JAMES a/k/a DAVON JONES | : | No. 94 WDA 2016 |

Appeal from the Suppression Order December 15, 2015
in the Court of Common Pleas of Allegheny County,
Criminal Division, No(s): CP-02-CR-0006714-2015

BEFORE:  BENDER, P.J.E., RANSOM and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED DECEMBER 19, 2016**

The Commonwealth of Pennsylvania appeals from the Order granting

the Motion to Suppress filed by Davon James, a/k/a Davon Jones ("James").

We affirm.

The suppression court set forth the relevant facts as follows:

[Parole Agent Charles Ackerman ("Agent Ackerman")] testified
that he had been supervising [James's] parole since May[] 2014.
At the end of April[] 2015, Agent Ackerman learned that [James]
had been cited for a traffic violation by the Port Authority Police
on April 8, 2015, but had not reported the violation.  On May 5,
2015, [James] was scheduled to report in person, but did not
appear for that meeting.  [James] called Agent Ackerman's office
and reported that he was going to Allegheny General Hospital[,]
and was unable to report.  On May 6, 2015, [James] appeared at
the parole office and saw Agent Ackerman's supervisor.  Despite
knowing that [James] presented himself to the parole office one
day late due to his hospital treatment, Agent Ackerman went to
[James's] residence on May 7, 2015[,] with the intent to search
the residence.  When Agent Ackerman entered the residence, he
immediately lifted one of the couch cushions to search for a
weapon.  Finding nothing under the couch cushion, [Agent
Ackerman] allowed [James] to sit on the couch and confronted
him with the traffic citation.  When [James] initially denied the

citation, Agent Ackerman placed him in handcuffs and called another parole agent to assist him. While they were waiting for the other agent to arrive, [James] began calling his girlfriend, Shamina, who was asleep in the basement. When Shamina came upstairs, Agent Ackerman handcuffed her as well. When the second parole agent arrived, [James] was removed from the couch and the other couch cushion was lifted, revealing a firearm. Agent Ackerman then called and requested that police and narcotics officers come to the house. The police arrived and obtained [James's] consent to search the residence[,] and drugs were found.

Suppression Court Opinion, 3/7/16, at 2-3 (citations to the record omitted).

James was subsequently charged with two counts of persons not to possess firearms, and one count each of criminal use of a communications facility, possession of a controlled substance, and possession of a controlled substance with the intent to deliver.[1] James filed a Motion to Supress the evidence found at his residence. The suppression court initially denied the Motion at a suppression hearing conducted on December 8, 2015, but after further argument by both parties, the court agreed to read and consider additional case law. At a subsequent hearing conducted on December 15, 2015, the suppression court granted James's Motion to Suppress. The Commonwealth filed a Motion for reconsideration, which the suppression court denied on January 6, 2016. This timely appeal followed.

On appeal, the Commonwealth raises the following issues for our review:

I.    Whether the [suppression] court erred in finding that [] Agent [Ackerman] failed to have the requisite level of

---

[1] *See* 18 Pa.C.S.A. §§ 6105(a)(1), 7512(a); 35 P.S. § 780-113(a)(16), (30).

suspicion [necessary] to search the couch upon which [James] was sitting?

II.     Whether the [suppression] court abused its discretion in denying the Commonwealth's request to reopen the record to present additional evidence[,] when the original hearing was cut short by the [suppression] court's ruling in the Commonwealth's favor on alternative grounds, but subsequently reversed itself and granted the suppression [M]otion without giving the Commonwealth the opportunity to complete its case?

Commonwealth Brief at 4.

In its first issue, the Commonwealth contends that the suppression court erred in determining that Agent Ackerman's search of James's residence was not reasonably related to the violations of obtaining a traffic citation and reporting one day late to his scheduled parole appointment due to hospitalization. *Id*. at 9. The Commonwealth asserts that Agent Ackerman had a reasonable basis for conducting a compliance check on James's residence, and that he was justified in conducting the limited search of the couch to determine whether any weapons were present. *Id*. at 12. The Commonwealth claims that Agent Ackerman was also justified in later lifting the second couch cushion based upon James's anxiousness, efforts to move about the room, and efforts to move to that corner of the couch. *Id*. The Commonwealth argues that parole agents may conduct a compliance check at a parolee's residence based solely upon their suspicion that the parolee has violated a condition of his parole. *Id*. at 13. On this basis, the

Commonwealth contends that the suppression court erred in granting the Motion to Suppress. *Id*.

The suppression court set forth the relevant law, addressed the Commonwealth's first issue, and concluded that it lacks merit. *See* Suppression Court Opinion, 3/7/16, at 2-7. We agree with the reasoning of the suppression court and affirm on this basis as to the Commonwealth's first issue. *See id*.

In its second issue, the Commonwealth points out that, at the initial suppression hearing, the suppression court interrupted the proceedings and denied the Motion to Suppress. Commonwealth Brief at 14. The Commonwealth asserts that, although the prosecutor advised the suppression court of the Commonwealth's intention to call Agent Ackerman as its only witness, the prosecutor decided to call additional witnesses after Agent Ackerman's cross examination, as the trial court had precluded the prosecutor from redirecting Agent Ackerman. *Id*. The Commonwealth claims that, although the prosecutor's concerns were negated by the suppression court's initial ruling in its favor, the suppression court's subsequent ruling granting the Motion to Suppress prevented the Commonwealth from concluding its case. *Id*.

The suppression court addressed the Commonwealth's second issue, and concluded that it lacks merit. *See* Suppression Court Opinion, 3/7/16,

at 7-8. We agree with the reasoning of the suppression court and affirm on this basis as to the Commonwealth's second issue. ***See id***.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/19/2016

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**
**CRIMINAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA

                v.                           CC: 201506714

DAVON JAMES a/k/a DAVON JONES,

                Defendant

**OPINION**

The Commonwealth has appealed from this Court's Order of December 15, 2015, which granted the Defendant's Motion to Suppress. However, a review of the record reveals that the Commonwealth has failed to present any meritorious issues on appeal and, therefore, this Court's Order must be affirmed.

The Defendant was charged with Persons Not to Possess Firearms,[1] Possession of a Controlled Substance with the Intent to Deliver,[2] Possession of a Controlled Substance[3] and Criminal Use of a Communication Facility.[4] A hearing on the Defendant's Motion to Suppress was held before this Court on December 8, 2015. This Court initially denied the Motion to Suppress at that hearing, but after further argument by both parties, agreed to read and consider

---

[1] 18 Pa.C.S.A. §6105(a)(1) - 2 counts

[2] 35 P.S. §780-113(a)(30)

[3] 35 P.S. §780-113(a)(16)

[4] 18 Pa.C.S.A. §7512(a)

1

additional case law. The parties reconvened on December 15, 2015, at which time this Court granted the Defendant's Motion to Suppress. This appeal followed.

On appeal, the Commonwealth raises two claims of error regarding this Court's ruling on the suppression motion. Both claims are meritless.

1.    *Lack of Reasonable Suspicion*

Initially, the Commonwealth argues that this Court erred in finding that the parole agent lacked reasonable suspicion to conduct the searches of the Defendant's couch and home, respectively. This claim is meritless.

"When the Commonwealth appeals from a suppression order, [the appellate court] follow[s] a clearly defined standard or review and consider[s] only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of facts bind an appellate court if the record supports these findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts." Commonwealth v. Deck, 954 A.2d 603, 606 (Pa.Super. 2008).

At the Suppression Hearing, the Commonwealth presented the testimony of the Defendant's parole agent, Charles Ackerman. He testified that he had been supervising the Defendant's parole since May, 2014. At the end of April, 2015, Agent Ackerman learned that the Defendant had been cited for a traffic violation by the Port Authority Police on April 8, 2015, but had not reported that violation. On May 5, 2015, the Defendant was scheduled to report in person, but did not appear for that meeting. The Defendant called Agent Ackerman's office and

2

reported that he was going to Allegheny General Hospital and was unable to report. On May 6, 2015, the Defendant appeared at the parole office and saw Agent Ackerman's supervisor. Despite knowing that the Defendant presented himself to the parole office one day late due to his hospital treatment, Agent Ackerman went to the Defendant's residence on May 7, 2015 with the intent search the residence (Suppression Hearing Transcript, p. 15). When Agent Ackerman entered the residence, he immediately lifted one of the couch cushions to search for a weapon. (S.H.T., p. 7). Finding nothing under the couch cushion, he allowed the Defendant to sit on the couch and confronted him with the traffic citation. When the Defendant initially denied the citation, Agent Ackerman placed him into handcuffs and called another parole agent to assist him (S.H.T., p. 8). While they were waiting for the other agent to arrive, the Defendant began calling for his girlfriend, Shamina, who was asleep in the basement. When Shamina came upstairs, Agent Ackerman handcuffed her as well (S.H.T., p. 23). When the second parole agent arrived, the Defendant was removed from the couch and the other couch cushion was lifted, revealing a firearm (S.H.T., p. 13). Agent Ackerman then called and requested that police and narcotics officers come to the house. The police arrived and obtained the Defendant's consent to search the residence and drugs were found.

The authority of a parole officer to search a parolee's residence is controlled by 61 Pa.C.S.A. §6153, which states in relevant part:

§6153. Supervisory relationship to offenders

(b)    Searches and seizures authorized. -

(1)    Agents may search the person and property of offenders in accordance with the provisions of this section.

3

*(2)* *Nothing in this section shall be construed to permit searches or seizures in violation of the Constitution of the United States or section 8 of Article 1 of the Constitution of Pennsylvania.*

*...*

*(d)* *Grounds for personal search of offender. -*

*...(2)* *A property search may be conducted by an agent if there is reasonable suspicion to believe that the real or other property in the possession of or under control of the offender contains contraband or other evidence of violations of the conditions of supervision...*

*... (6)* *The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision. In accordance with such case law, the following factors, where applicable, may be taken into account:*

*(i)* *The observations of agents.*

*(ii)* *Information provided by others.*

*(iii)* *The activities of the offender.*

*(iv)* *Information provided by the offender.*

*(v)* *The experience of agents with the offender.*

*(vi)* *The experience of agents in similar circumstances.*

*(vii)* *The prior criminal and supervisory history of the offender.*

*(viii)* *The need to verify compliance with the conditions of supervision.*

61 Pa.C.S.A. §6153.

The Defendant relies on <u>Commonwealth v. Hughes</u>, 836 A.2d 893 (Pa. 2003) for the proposition that "a search is only reasonable where the totality of the circumstances demonstrates that: (1) the parole officer had reasonable suspicion to believe that the parolee committed a

4

parole violation; and (2) the search was reasonably related to the duty of the parole officer." Commonwealth v. Hughes, 836 A.2d 893, 899 (Pa. 2003). This Court also finds Commonwealth v. Hunter, 963 A.2d 545 (Pa.Super. 2008) particularly relevant. Although both cases ultimately resulted in the denial of suppression, both are instructive to the case at hand.

In Commonwealth v. Hughes, the defendant was observed standing outside a bar by his parole officer and a police officer. By the time the parole and police officers circled the block in an attempt to speak with the defendant, he was gone. They traveled to the defendant's residence and encountered several teenage girls standing on the front porch of the residence. The girls indicated that the defendant was not there, but allowed the officers into the residence and followed them through the house. When the officers went into the defendant's bedroom, they noticed a clear plastic baggie containing marijuana in plain view. The officers then spoke with the owner of the house and obtained consent for a full search. During that search, the officers found crack cocaine and other items hidden in the defendant's closet. The trial court denied the defendant's motion to suppress on the basis that the search was permissible by virtue of the defendant's status as a parolee alone. The Superior Court disagreed with that blanket permission to search, but did determine that under the facts of the case, the officers had reasonable suspicion to search the defendant's residence. Our Superior Court affirmed the search based on the "apparent authority" exception, since they had obtained the consent from the owner of the house. Id. at 903-904.

In Commonwealth v. Hunter, 963 A.2d 545 (Pa.Super. 2008), the defendant had absconded from probation and had been convicted of a new offense while on probation. The probation officer and his supervisor went to the defendant's residence and the defendant's aunt

5

allowed them into the defendant's room to look for him, though he was not present. In the course of attempting to look for any evidence of a new address or the defendant's whereabouts, the officers discovered three wallets, including identification and credit cards which had been reported stolen by other individuals. The officers emphasized that they did not go to the house with the intent to search for contraband or other evidence of criminal activity, but were merely attempting to locate the defendant. The trial court determined that the officers had reasonable suspicion to conduct a search of the defendant's room, and also had obtained consent for the search from the defendant's aunt through the apparent authority exception and denied the defendant's motion to suppress. The Superior Court affirmed the ruling.

Although the fact pattern is markedly different in the instant case, this Court does find the Hughes "reasonable suspicion" doctrine controlling. Here, Officer Ackerman testified that based on the Defendant's reporting one day late due to a hospitalization and obtaining a traffic citation, he went to the defendant's residence with the intent to conduct a full search of the residence. As soon as he entered the residence, Officer Ackerman lifted a couch cushion to search for contraband. Before any contraband had been found, the Defendant and his girlfriend were placed into handcuffs. The Defendant was then removed from the couch where the other cushion was lifted and a gun found. The Defendant, already handcuffed and under arrest, consented to the search of the rest of the residence.

Pursuant to Hughes and Hunter, a property search of a parolee's home may only be conducted when there was reasonable suspicion to believe that a parole violation occurred and the search was "reasonably related" to that violation. Here, there is no justifiable basis for a determination that the search of the defendant's residence was "reasonably related" to the

6

violations of obtaining a traffic citation and reporting one day late due to hospitalization or that any evidence of those violations could be found underneath the couch cushions. The full search of the residence is similarly flawed, insofar as although the Defendant consented, he did so after being subject to an illegal search and resulting illegal arrest.

Given the particular facts and circumstances of this case, it is clear that the initial search of the Defendant's couch was not supported by reasonable suspicion and the second search of his residence was the product of the first illegal search and illegal arrest. This Court appropriately granted the Defendant's Motion to Suppress and so this claim must fail.

2.    *Denial of Additional Evidence*

The Commonwealth also argues that this Court erred in denying its request to reopen the record to present additional evidence. Again, this claim is meritless.

At the beginning of the suppression hearing on December 8, 2015, Assistant District Attorney Lawrence Sachs, Esquire, announced that he "only intend[ed] to call Mr. Ackerman for the suppression hearing." (S.H.T., p. 3). Once Mr. Ackerman's testimony was concluded, Mr. Sachs made no effort or attempt to present any additional evidence or witnesses regarding the suppression motion. Similarly, when the case reconvened on December 15, 2015, knowing that this Court was reconsidering its initial ruling, the Commonwealth still made no effort to present any additional evidence or witnesses relating to the suppression issue.

This Court agrees with the Defendant's assertion in his Response to Commonwealth's Motion to Reconsider Suppression that it was disingenuous of the Commonwealth to be "satisfied with the record when it thought it was winning, to now complain after it lost" (Defendant's Response to Commonwealth's Motion to Reconsider Suppression, p. 2). The

7

Commonwealth initially announced its intent to only call Mr. Ackerman and then made no effort or request at either hearing to present any additional evidence or testimony. Moreover, as discussed above, the illegality of the full residence search flowed from the illegality of the initial search and arrest, when only the Defendant and Mr. Ackerman were present. There is, in fact, no evidence or testimony which could have been presented that would have resulted in a different ruling on the Motion to Suppress. Again, this claim must fail.

Accordingly, for the above reasons of fact and law, this Court's Order of December 15, 2015, which granted the Defendant's Motion to Suppress, must be affirmed.

BY THE COURT:

_____, J.

Dated: 03-07-2016

8