J-S08038-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| VICTOR RENELL BROWN | : | |
| | : | No. 1259 WDA 2017 |
| Appellant | | |

Appeal from the Judgment of Sentence August 3, 2017
In the Court of Common Pleas of Washington County Criminal Division at
No(s):  CP-63-CR-0003268-2015

BEFORE:   LAZARUS, J., KUNSELMAN, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED April 2, 2018**

Appellant Victor Renell Brown appeals from the judgment of sentence entered by the Court of Common Pleas of Washington County after a jury convicted Appellant of Possession of a Firearm Prohibited (two counts), Receiving Stolen Property (two counts), Possession of a Controlled Substance, and Possession of Drug Paraphernalia.  Appellant challenges the denial of his suppression motion and claims that the jury's verdict is unsupported by the sufficiency and the weight of the evidence.  We affirm.

After Appellant filed a pretrial suppression motion, a hearing was held at which the following factual background was developed.  On December 7, 2015, Charleroi Regional Police Officer Michael Leasure received a phone call from Kathleen Patterson, who resided at 1109 Crest Avenue in Charleroi.  In her phone call, Ms. Patterson requested that an officer respond to her

_____
*   Former Justice specially assigned to the Superior Court.

residence as she had discovered drug paraphernalia in an upstairs bedroom of her home.

Officer Leasure had come into contact with Ms. Patterson on multiple prior occasions in which he responded to "incidents" at this home involving Ms. Patterson, her son, and her daughter, Tiffany. From these encounters, Officer Leasure was aware that Tiffany was incarcerated in county prison. Ms. Patterson had also previously shared with Officer Leasure that she was unhappy that Tiffany's boyfriend, Appellant, was still living in Tiffany's bedroom several months after Tiffany had been incarcerated.

Appellant had never signed a lease to live in Ms. Patterson's home and there is nothing in the record that indicates that he paid any rent to stay there. When Ms. Patterson had asked Officer Leasure to advise her on what measures she had to take to remove Appellant from her home, he recommended that she pursue "legal eviction."

When Officer Leasure arrived at Ms. Patterson's home on the day in question, Ms. Patterson gave him permission to enter the residence and led him to an upstairs bedroom. The door was ajar or "partially opened." Notes of Testimony ("N.T."), 12/20/16, at 15. Ms. Patterson opened the door further to give the officer access to the room. Officer Leasure noticed a "padlock" was partially hanging from the bedroom door; Officer Leasure inferred that someone had unscrewed the padlock from the door. N.T. at 7. Officer Leasure and Ms. Patterson did not discuss who had placed the lock on the door or who

had removed the lock. Ms. Patterson directed Officer Leasure to particular objects she found in the bedroom.

While standing in the room, Officer Leasure observed in plain view a digital scale, plastic "diapers" commonly utilized to store illegal substances, a substance that appeared to be crack cocaine, firearms, drug paraphernalia, and Appellant's Pennsylvania photo identification. Before proceeding further, Officer Leasure made a phone call to a magisterial district judge to verify whether a search warrant was necessary. The magistrate informed Officer Leasure that he did not need a warrant as the items were in plain view. Officer Leasure seized the aforementioned evidence and Appellant was subsequently located and placed under arrest.

Ms. Patterson also testified at the suppression hearing and shared additional details that she had not revealed to Officer Leasure. Ms. Patterson explained that while her daughter, Tiffany, had originally placed the lock on the bedroom door, both Tiffany and Ms. Patterson had a key to the lock. The lock was not placed on the door to exclude Ms. Patterson from the room, but to keep Ms. Patterson's grandchildren out of the room. Ms. Patterson claimed she did no longer had a key to the lock because she had lent her key to Tiffany, who had misplaced her own key. Ms. Patterson admitted she unscrewed the lock from the door on her own initiative before the police arrived, and did not assert that she unscrewed the lock at the direction of the police. In addition, Ms. Patterson testified that she had told Appellant that he was no longer

welcome to live in her home and he had told her he was looking for an apartment.

While testifying at the suppression hearing, Ms. Patterson made several contradictory statements. Although Ms. Patterson first testified that she had contacted police to come to her home as she had found drug paraphernalia in her daughter's bedroom, on cross-examination, she claimed that police had come to her door asking to search her home for stolen weapons. When questioned again, Ms. Patterson claimed that she could not remember if she had called the police. Thereafter, upon questioning by the trial court, Ms. Patterson admitted that she had summoned the police to come to her home.

After the conclusion of the suppression hearing, the lower court denied Appellant's motion based on its finding that Ms. Patterson had both (1) actual authority and (2) apparent authority to consent to the search of her daughter's bedroom. Thereafter, at the conclusion of a three-day jury trial, Appellant was convicted of Possession of a Firearm Prohibited (two counts), Receiving Stolen Property (two counts), Possession of a Controlled Substance, and Possession of Drug Paraphernalia. Sentencing was deferred for the preparation of a pre-sentence report. On April 11, 2017, the trial court imposed an aggregate sentence of eight to twenty years' imprisonment.

At the sentencing hearing, defense counsel filed a motion to withdraw her representation. The lower court advised Appellant of his post-sentence rights and indicated that new counsel would be appointed if counsel's request was granted. Although the trial court subsequently allowed trial counsel to

withdraw, Appellant was not appointed counsel for his direct appeal until May 31, 2017. Moreover, for unknown reasons, the appointed counsel, Gray Graminski, Esq., was denied access to visit Appellant until the lower court granted Atty. Graminski's June 28, 2017 request to have a contact visit with Appellant to discuss filing an appeal.

Atty. Graminski filed a notice of appeal on August 29, 2017. Appellant complied with the trial court's request to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). In its Opinion pursuant to Rule 1925(a), the trial court asks this Court to review this appeal despite its untimeliness as a breakdown in court processes impacted Appellant's ability to file a timely appeal.

Our rules of appellate procedure provide that a "notice of appeal ... shall be filed within 30 days after the entry of the order from which the appeal is taken." Pa.R.A.P. 903(a). As Appellant was required to file a notice of appeal within 30 days of the imposition of his sentence on April 11, 2017, his notice of appeal filed on August 29, 2017 is untimely.

As a general rule, "the [C]ourt may not enlarge the time for filing a notice of appeal[.]" Pa.R.A.P. 105(b). However, we will "address[ ] an untimely appeal [if] it [is] shown that [a] breakdown of the processes of the trial court caused the appeal to be untimely." *Commonwealth v. Khalil*, 806 A.2d 415, 420 (Pa. Super. 2002).

We agree with the trial court's assessment that a breakdown in court processes occurred when defense counsel was allowed to withdraw after

sentencing, Appellant was not appointed new counsel until well after the thirty-day period to file an appeal had expired, and newly appointed counsel was prevented from visiting Appellant in prison. It is well-established that a criminal defendant is entitled to have the assistance of counsel in filing and perfecting an appeal. *Commonwealth v. Halley*, 582 Pa. 164, 171, 870 A.2d 795, 800 (2005) (quoting *Commonwealth v. Lantzy*, 558 Pa. 214, 225, 736 A.2d 564, 571 (1999) (indicating that "a failure to file *or perfect* such an appeal results in a denial [of counsel] so fundamental as to constitute prejudice *per se*"))). Therefore, we may proceed to review the merits of this appeal.

Appellant raises three issues for our review on appeal:

I. Did the Court commit reversible error when it ruled that the warrantless search conducted by Charleroi police was constitutional, without citing exigent circumstances or being supported by probable cause, without proof that [Appellant] actually resided at the residence, without actual or apparent authority that [K]athleen Patterson could effectively waive another individual's right to privacy by removing a lock from Tiffany's bedroom door?

II. Was the sufficiency of the evidence presented by the Commonwealth adequate to sustain a conviction?

III. Was the weight of the evidence presented by the Commonwealth sufficient to sustain a conviction?

Appellant's Brief, at 3.

Appellant first challenges the denial of his suppression motion. Our standard of review in evaluating the denial of a suppression motion is as follows:

> [The] standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing such a ruling by the suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record....Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

***Commonwealth v. Bush***, 166 A.3d 1278, 1282 (Pa.Super. 2017), *appeal denied*, 176 A.3d 855 (Pa. 2017) (quoting ***Commonwealth v. Eichinger***, 591 Pa. 1, 915 A.2d 1122, 1134 (2007) (internal citations omitted)).

Specifically, Appellant argues that the evidence obtained in the search of Ms. Patterson's home should have been suppressed as the police were not authorized to conduct a warrantless search of the bedroom belonging to Tiffany Patterson. "Warrantless searches and seizures are considered to be unreasonable and therefore, prohibited, except for a few established exceptions pursuant to both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution." ***Commonwealth v. Hughes***, 575 Pa. 447, 459, 836 A.2d 893, 900 (2003) (citing ***Schneckloth v. Bustamonte****,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); ***Commonwealth v. Kohl****,* 532 Pa. 152, 615 A.2d 308 (1992)). One exception to the warrant requirement is a third party's actual consent to the search. ***Hughes***, 575 Pa. at 459, 836 A.2d at 900.

Under the actual consent exception, police officers are not required to obtain a search warrant based upon probable cause when they obtain the voluntary consent of a third party who has the authority to give consent. *Id*.

> The United States Supreme Court has held that a third party has actual authority to consent to a search if he/she "possesses common authority over or other sufficient relationship to the premises or effects sought to be inspected." [*U.S. v.*] *Matlock*, 415 U.S. [164,] 171, 94 S.Ct. 988 [(1974)]. The *Matlock* Court described "common authority" as follows:
>
>> Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.
>
> *Id*. at n. 7 (citations omitted).

*Commonwealth v. Basking*, 970 A.2d 1181, 1188 (Pa.Super. 2009).

Despite Appellant's challenge to the trial court's finding that Ms. Patterson voluntarily consented to the search, Appellant does not argue on appeal that Ms. Patterson lacked common authority over the bedroom in question that belonged to Ms. Patterson's daughter, Tiffany. Appellant does not allege that he had exclusive possession or any right to control the bedroom and never offered any evidence to challenge Ms. Patterson's testimony suggesting she had equal access to her daughter's room.

This Court has discussed the actual consent exception to the warrant requirement with respect to its application to a parent's authority over an adult son or daughter's bedroom:

> In the context of the parent-child relationship, LaFave notes in his treatise on search and seizure that the power of a parent to consent to a search of the home derives not so much from the idea of common authority as it does from the status of parent. Wayne R. LaFave, Search and Seizure, Vol. III, Chap. 8, § 8.4(b), 282 (3d ed. 1996). LaFave states that "courts tend to recognize a superior right in the parents to keep the family home free of criminal activity." *Id*. at 285. The parents' general, "superior authority" over their own property, however, "does not alone establish a right on their part to intrude into an area in which, by established practice, their adult off-spring had been permitted to devote to his exclusive use." LaFave, Search and Seizure: A Treatise on the Fourth Amendment, § 8.4(b), p. 203 (4th ed. 2004). In this vein, the courts have interpreted *Matlock* and found that a parent had sufficient "common authority" over a child's room to consent to a search of the room where the parent was provided with equal access to the child's living quarters or the child failed to take steps to exclude the parent from his/her room.

*Commonwealth v. Basking*, 970 A.2d 1181, 1188 (Pa.Super. 2009). *See, e.g., United States v. Block,* 590 F.2d 535, 539–41 (4th Cir. 1978) (finding mother had authority to permit police to inspect the bedroom of her adult son who was a "mere guest occupant" and the mother had "normal free access that heads of household commonly exercise in respect of the rooms of family member occupants"); *State v. Swenningson,* 297 N.W.2d 405, 407–09 (N.D. 1980) (finding father's common authority over adult son's bedroom validated his consent to the search of the room); *State v. Harris,* 642 A.2d 1242, 1247 (Del.Super.Ct. 1993) (finding adult son authorized his mother's joint access and control of his bedroom by giving her a key to the lock on the

door); **State v. Douglas**, 498 A.2d 364, 371–72 (N.J.App.Div. 1985) (recognizing that "the overwhelming majority of the [state] cases uphold the right of the parent to consent to a search of the son or daughter's room").

In this case, although Tiffany had invited Appellant to live in the Patterson home, both Tiffany and her mother shared authority of Tiffany's bedroom. Appellant never challenged Ms. Patterson's assertion that although Tiffany had placed the lock on the bedroom door to ensure that children in the house did not enter, she authorized her mother's access by giving her a key to the lock. In addition, Appellant knew that he was no longer welcome to continue living in the home as Ms. Patterson had asked him to leave. Moreover, Appellant never asserted that he had exclusive possession or control of the room not contest the Commonwealth's assertion that he did not have a lease agreement to live in the home or pay rent.[1]

Based on these facts, it was reasonable for the trial court to find that Ms. Patterson had common authority over the upstairs bedroom as there was evidence that Ms. Patterson had equal access to and was never excluded from entering her daughter's bedroom. As a result, we conclude that the trial court

_____

[1] We find this case distinguishable from **Commonwealth v. O'Neal**, 429 A.2d 1189, 1190–91 (Pa.Super. 1981), in which this Court held that a lessee of a home could not consent to a search of a bedroom that a temporary gratuitous guest used exclusively. As emphasized above, Appellant has never asserted that he had exclusive possession or control of the bedroom or challenged Ms. Patterson's suggestion that her daughter had provided her equal access to the bedroom.

did not err in finding Ms. Patterson had actual authority to consent to the search of her daughter's bedroom. [2]

Second, Appellant also challenges the sufficiency of the evidence supporting his numerous convictions. Appellant does not challenge any particular element to any of his convictions but offers an undeveloped one-sentence allegation that he cannot be convicted as charged as the police did not find DNA or fingerprint evidence in the room.[3] He also alleges that there was evidence that he was not residing in Ms. Patterson's home but does not further identify this supposed proof.

As Appellant's argument is largely undeveloped, we find he has waived his sufficiency challenges on appeal. "[W]here an appellate brief fails to … develop an issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of an appellate court to formulate appellant's arguments for him." *Commonwealth v. Woodard*, 634 Pa. 162, 210, 129 A.3d 480, 509 (2015). As a result, we need not further review these undeveloped sufficiency claims.

---

[2] Based on our conclusion that Ms. Patterson had actual authority to consent to the search, we need not review Appellant's challenge to the trial court's conclusion that it was reasonable for the police to believe that Ms. Patterson had apparent authority to consent to the search.

[3] Appellant also makes vague factual assertions that the evidence was insufficient to support his convictions because the officers did not have authority to conduct a warrantless search. As we have found Appellant's suppression claim to be meritless, it is not necessary to review these claims further.

Third, Appellant challenges the weight of the evidence supporting his convictions. "A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial: (1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." Pa.R.Crim.P. 607(A). "The purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." Pa.R.Crim.P. 607, Comment. *See Commonwealth v. Kinney*, 157 A.3d 968, 972 (Pa.Super. 2017) (finding appellant waived challenge to the weight of the evidence by failing to raise it before the trial judge pursuant to Rule 607). As Appellant did not preserve the challenge to the weight of the evidence at sentencing or in a post-sentence motion, he has waived the claim on appeal.

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/2/2018

- 12 -